638 A.2d 1164

**1986 MERCEDES BENZ 560 CE VIN: WDBCA45DGA211147**
**Registered Owner: Troy Bowers**

v.

**STATE of Maryland.**

**No. 57, Sept. Term, 1993.**

Court of Appeals of Maryland.

March 28, 1994.

Stanley E. Baritz, Mark W. Oakley, both on brief, Rockville, for petitioner.

David S. Whitacre, Asst. State's Atty. for Prince George's County, Upper Marlboro, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

This case requires us to construe and then apply Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 297(*l*).[1] Specifically, we must decide whether, in this case, the State is entitled to the benefit of the presumption that the motor vehicle, which is the subject of the forfeiture proceedings, is forfeitable as proceeds[2] of drug activity.[3] If we determine that it is—that the State has established the necessary prerequisites by the prescribed level of proof—then we must decide whether the claimant of the property, in this case, the registered owner, Troy Bowers ("Bowers" or "the claimant"), has rebutted the presumption. The trial court held that the State properly forfeited the motor vehicle, the claimant not having rebutted the presumption that it was subject to forfeiture as proceeds. In an unreported opinion, the Court of Special Appeals, af-

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. The subject seizure was made in August, 1990; hence, the applicable version of section 297 was that codified in Maryland Code (1957, 1982 Repl.Vol., 1990 Cum.Supp.), the relevant subsections of which are identical to those in present section 297.

2. Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 297(a)(10) defines "proceeds" as including "property derived directly or indirectly in connection with or as a result of an offense or offenses under this subheading." The subheading of which § 297 is a part is captioned, "Health—Controlled Dangerous Substances," and encompasses §§ 276–304, inclusive.

3. The drug activity section 297(*l*) references is precise: Art. 27, § 286, "Unlawful manufacture, distribution, etc.; counterfeiting, etc.; manufacture, possession, etc., of certain equipment for illegal use; keeping common nuisance," § 286A, "Bringing into State in excess of certain amounts," § 286B, "Distribution of noncontrolled substance as controlled dangerous substances," § 286C, "Using minors for manufacture, delivery or distribution of controlled dangerous substances," and § 290, "Attempts, endeavors and conspiracies."

firmed. 95 Md.App. 737. We granted certiorari upon the claimant's petition to consider the important issue presented, 331 Md. 284, 627 A.2d 1063. We shall reverse.

## I.

The State filed a "Complaint For Forfeiture of Vehicle Pursuant To Article 27, Section 297," the subject of which was a 1986 Mercedes Benz 560CE, Tag: ITA–719 (Virginia), serial VIN WDBCA45D9GA211147. As amended, the complaint alleged, *inter alia,* that

> the aforementioned vehicle was used or intended for use, to transport or facilitate the transportation, sale, receipt, possession or concealment of the controlled dangerous substances as listed in the schedules found in Article 27, Section 279, or the raw materials, products and equipment which were used or intended for use in the manufacturing, compounding, processing and delivering of such controlled dangerous substances or constitutes proceeds traceable to the exchange of controlled dangerous substances.

> \* \* \* \* \* \*

> In this case, the motor vehicle [as] utilized constitutes proceeds traceable to the exchange of controlled dangerous substances.

With respect to Bowers, the statement of facts attached to the complaint stated:

> The State alleges that the registered owner was merely a nominee in regards to this subject vehicle and that the actual owner of the subject vehicle was the alleged owner [*i.e.* Estate of Keith Delante Joiner].

> The State also alleges that the subject vehicle was purchased by the alleged owner with proceeds derived from the sale of CDS.

The claimant and Joiner's estate [4] answered the complaint and moved to dismiss. Their answer admitted "that said vehicle was registered to Troy F. Bowers and owned by the Estate of Keith Joiner."

The evidence on the basis of which the trial court ordered forfeiture largely is not in dispute. Corporal Michael Leadbeter of the Prince George's County Police Department, Narcotics Enforcement Division, testified that he initiated an investigation into Joiner's alleged involvement in the distribution of cocaine in the Washington, D.C. metropolitan area in June, 1990, after receiving information to that effect from a confidential informant. Before he testified, the claimant objected, arguing that the testimony as to what the informant said was hearsay. The claimant's objection on hearsay grounds was overruled; however, the trial court ruled that the information received from the informant was admitted "only to explain the subsequent actions of this witness. It is not necessarily being admitted for the truth but to say what his state of mind was as to why he did things. It could not be and would not be used to prove drug activity." Corporal Leadbeter further testified that the informant also stated that Joiner drove "a blue two-door Mercedes Benz with blue BBS rims," although he or she did not specify the year.

Corporal Leadbeter testified that he "checked the County Police department's intelligence files both to verify or [corroborate] Mr. Joiner's involvement in controlled dangerous substance activity, along with corroborating the fact that he [was] driving the blue Mercedes Benz." Surveillance was established at Joiner's residence, "the address where [Joiner] was involved in that action [distribution of controlled dangerous substance]," according to the informant, "along with other places." He stated that he saw the Mercedes Benz at Joiner's

---

4. Joiner's estate is not a party to these proceedings. Its answer to the forfeiture petition was ordered stricken by the trial court and its interest in the Mercedes Benz ordered forfeited without a hearing. It did not note an appeal from that judgment. Only the claimant appealed the forfeiture and petitioned this Court for writ of certiorari.

residence on occasions and at other places and, on one occasion, Joiner was in the car when it was stopped.[5]

Joiner was killed in an automobile accident in the early morning of August 5, 1990. Later that morning, his apartment was searched pursuant to a search and seizure warrant, issued on August 3, 1990, for narcotics, narcotics paraphernalia, and guns. Recovered from a weightlifting bench in the dining room area of the apartment were a hand rolled cigarette containing marijuana and PCP and 0.4 grams of PCP. A white box, containing an acculab electronic scale, three kitchen measuring spoons, a pill bottle containing a single-edge razor blade, and three "zip-loc" style plastic sandwich bags, was seized from the kitchen. On the paraphernalia and in the white box in which they were contained was a white "powdery residue" which was field tested and determined to be cocaine. Having qualified as an expert in methods of distribution and the significance of the items found in the distribution of controlled dangerous substances, Corporal Leadbeter opined, based on the items seized, that Joiner was a distributor of controlled dangerous substances.

With respect to the Mercedes Benz,[6] Corporal Leadbeter testified that he recovered, in Joiner's bedroom, a sales receipt for it from Mark Cook's Euro–Classics Auto Dealership in Midlothian, Virginia. The receipt listed Troy Bowers, rather than Joiner, as the purchaser. Believing it to be Joiner's property, Corporal Leadbeter obtained a seizure warrant for the Mercedes Benz. It was subsequently located in a District of Columbia police impound lot, returned to Maryland, and searched. Relevant to the case *sub judice,* recovered in the

---

**5.** It was not clear whether Joiner was driving or was simply a passenger. Furthermore, Corporal Leadbeter did not disclose in detail what his check of the County Police department's intelligence files turned up. Nor did he specify the other locations from which the informant alleged Joiner distributed controlled dangerous substances or at which the Mercedes Benz was seen.

**6.** Documents pertaining to various automobiles were recovered during the search. Corporal Leadbeter testified that more than one confidential informant told him that Joiner owned several motor vehicles.

search of that car was "a price list kind of thing with some business cards on it that had Keith Joiner's name on it." Following up on that lead, Corporal Leadbeter learned that the business, Hollywood Car Care, "was some kind of auto detailing business," which was located next to Joiner's apartment. He testified, without objection, that he "called the business and asked if Keith Joiner worked there. And they said that he did not work there."

The State's only other witness, Detective William T. Whigham of the Prince George's County State's Attorney's Office, testified concerning his conversation with the claimant. According to Detective Whigham, Bowers contacted him to claim the Mercedes Benz. Notwithstanding that he had no documentation to that effect, he indicated that he had "sold" the Mercedes Benz to Joiner approximately four months earlier. To date, he said, he had received only $4400.00, consisting of a $3,000.00 downpayment and two installments of $700.00 each. Bowers claimed that Joiner was in default of their agreement. Shortly before his death, he reported, Joiner purchased another car, also titled in Bowers' name, for $28,000.00 cash and, thereafter, had ceased making installments on the Mercedes Benz.

The trial court denied Bowers' motion to dismiss, ruling: "There is sufficient evidence to give rise to the statutory presumption, which may be rebutted." As will become obvious from the court's final ruling, *see infra,* the presumption to which the court referred was that Joiner, and not Bowers, owned the Mercedes Benz. Bowers then presented his case. Testifying in his own behalf, he confirmed that he sold the Mercedes Benz to Joiner, but denied that Joiner owned it at the time of Joiner's death. His explanation was consistent with what he had related to Detective Whigham, that Joiner was in default of their agreement as a result of not having made the agreed $700.00 installment payments. Bowers also testified that the Joiner deal was not the only one of its kind that he had engaged in. He explained that he had purchased a number of cars in his name, but had either lent, given, or leased them to others, including his sisters. The source of the funds he used for these purchases, he asserted, was either his savings or loans from various relatives.

The trial court ordered forfeiture of the Mercedes Benz. It reasoned (emphasis added):

Court has already ruled that the evidence that was put on by the moving party gave rise to *the presumption of owner-ship*. Now, the issue before the Court is whether or not that additional evidence placed before the Court [by the] person claiming the property has been sufficient to rebut the presumption. The Court has reviewed the evidence presented, applying its own common sense and everyday experiences, but also taking into consideration the manner in which the witness has testified, the recollection of the witness, ability to remember. These are all the standards in which the trier of the fact is required to apply; whether or not the witness had an interest in the outcome [of] the case, whether or not the witness' testimony is supported or contradict[ed] by other evidence that the court believes. And applying all of these and the other standards of which the trier of the fact is required to apply in the State of Maryland, the Court finds that the defense or the claiming party's evidence does not rise to that level that would rebut the presumption.

The claimant's timely appeal to the Court of Special Appeals was unsuccessful. While, in affirming the judgment of the trial court, that court acknowledged "the interplay between § 297(b),[7] on the one hand, and § 297(*l*)[8] on the other," it

---

**7.** As relevant to the case *sub judice*, § 297(b), in pertinent part, pro-vides:

(4) All conveyances including aircraft, vehicles or vessels, which are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of prop-erty described in paragraph (1) or (2) [controlled dangerous sub-stances or the raw materials, products and equipment used in its manufacture, etc.] of this subsection. . . .

  *  *  *  *  *

(10) Everything of value furnished, or intended to be furnished, in exchange for a controlled dangerous substance in violation of this subheading, all proceeds traceable to such an exchange, and all negotiable instruments and securities used, or intended to be used, to facilitate any violation of this subheading.

**8.** Section 297(1) provides:

*Presumption of ownership of property.*—(1) Except as provided in paragraph (2) of this subsection, when the State establishes by clear

held that "there is ... no necessity for the State [to seek to forfeit certain property] under § 297($l$).... That section— § 297($l$)—exists only to provide the State with a mechanism for achieving the forfeiture of the property whose link to CDS otherwise is rather attenuated." This is true, the court opined, even when, in fact, the State attempted to prove the elements of § 297($l$). All that is required, the intermediate appellate court asserted, is that the State have adduced evidence tending to prove that the subject property fell within the definition of § 297(b)(4), *i.e.* that it was "used [or intended to be used] to *facilitate* ... [drug distribution activities.]" Subsection (b) is, after all, it observed, "the sieve through which all forfeited property must pass." (citing *State v. 1982 Plymouth*, 67 Md.App. 310, 314, 507 A.2d 633, 635 (1986)).

Turning to the case *sub judice*, applying § 297(b)(4), the Court of Special Appeals held that Corporal Leadbeter's testi-

---

and convincing evidence that a person has committed a violation of Article 27, § 286, § 286A, § 286B, or § 286C of the Code, or Article 27, § 290 of the Code in relation to these offenses, there is a rebuttable presumption that any property or any portion thereof in which that person has an ownership interest is subject to forfeiture as proceeds if the State establishes by clear and convincing evidence that:

(i) The property was acquired by such person during the period in which such person had committed violations of Article 27, § 286, § 286A, § 286B, or § 286C of the Code, or Article 27, § 290 of the Code in relation to these offenses, or within a reasonable time after such period;  and

(ii) There was no likely source for such property other than the violation of Article 27, § 286, § 286A, § 286B, or § 286C of the Code, or Article 27, § 290 of the Code in relation to these offenses.

(2) Except as provided in subsection (n)(2) of this section, real property used as the principal family residence may not be forfeited under this subsection unless it is shown that one of the owners of the real property was convicted of one or more of the offenses described under paragraph (1) of this subsection.

(3) The burden of proof is on a claimant of the property to rebut the presumption in paragraph (1) of this subsection.

mony detailing the information he received from his informant "was clearly sufficient to indicate (1) that Joiner was engaged in the 'sale, receipt, possession, or concealment,' of controlled dangerous substances, and (2) that the Mercedes was 'used, or intended for use, to transport, or in [some] manner to facilitate the transportation' of said substances." [9] Although the court did not specify what level of proof was required, presumably it tested the sufficiency of the evidence by the preponderance standard. Similarly, the court found that the trial court was not clearly erroneous in determining that, despite being the registered owner, the claimant did not own the Mercedes, having previously sold it to Joiner.

## II.

■■ A forfeiture proceeding is a civil action *in rem*. *State v. Greer*, 263 Md. 692, 694, 284 A.2d 233, 235 (1971); *Prince George's County v. Blue Bird Cab Company*, 263 Md. 655, 659, 284 A.2d 203, 205 (1971); *Bozman v. Office of Finance*, 52 Md.App. 1, 6, 445 A.2d 1073, 1076 (1982), *aff'd*, 296 Md. 492,

---

**9.** The specific testimony upon which the intermediate appellate court relied was the following:

By Counsel for the State:
Q  And what ... vehicles were you identifying—did you identify in fact this '86 Mercedes?
A  Yes.
Q  And how did you come to identify that as a [possible] vehicle owned by Mr. Joiner?
A  In June of 1990, when the case was initially investigated, I spoke with—I received a call from a confidential informant who related that he was involved in the distribution of controlled dangerous substances. The person provided the address where he was involved in that action, provided information as to what he was driving. The vehicle that the caller advised he [was] driving was—I don't think they specifically stated it was a 1987, but it was a blue two door Mercedes Benz with blue BBS rims.

I checked the intelligence files of the County police department both to verify or [corroborate] Mr. Joiner's involvement in controlled dangerous substance activity, along with corroborating that he [was] driving this blue Mercedes Benz. Surveillance was established. This is prior to the search warrant.

Surveillance was established at the residence of 3703 Silver Park Drive, along with other places. And the vehicle had been observed at that address on occasions and other places.

463 A.2d 832 (1983). As such, the burden of proof necessary to sustain a forfeiture is by a preponderance of the evidence. *Blue Bird Cab Company,* 263 Md. at 659, 284 A.2d at 205.

As the Court of Special Appeals recognized, there are three subsections of section 297 that potentially have relevance to the case *sub judice:* subsections (b)(4) and (b)(10) and subsection (*l*). Subsections (b)(4) and (b)(10) define categories of property subject to forfeiture. The former focuses on the use of the property, the latter on its source. Thus, in the case of subsection (b)(4), an automobile or other conveyance may be forfeited if the State is able to prove that it was used, or intended for use, in connection with, or to facilitate, drug activities. On the other hand, pursuant to subsection (b)(10), forfeiture of property may be ordered if the State proves that it constitutes proceeds of drug activity. In neither case is there a requirement that the property's owner also be implicated. *See Greer,* 263 Md. at 694, 284 A.2d at 235; *Blue Bird Cab Co.,* 263 Md. at 659, 284 A.2d at 205.

Subsection (*l*) provides an alternate method of proving the category of property, *i.e.,* proceeds, addressed by subsection (b)(10). There is no provision in § 297 creating a presumption of use or intended use of the property referenced pursuant to subsection (b)(4); hence, the proof of its use or intended use affirmatively must be proven. The situation is quite different when the issue involves proof of proceeds. In contrast to subsection (b)(4) the State is given the option either affirmatively to prove that the subject property is "derived directly or indirectly in connection with or as a result of an offense or offenses under this subheading," § 297(a)(10), pursuant to subsection (b)(10) or, when certain enumerated offenses are involved, of relying on the presumption prescribed by subsection (*l*). Should the State proceed pursuant to § 297(b)(10) and adduce evidence to prove that the property constitutes proceeds, it need neither establish the property owner's involvement in drug transactions, nor negate other likely sources of that property. As relates to proceeds, section 297(b)(10) requires only that the property be traceable to an exchange for a controlled dangerous substance. Section

297($l$ ), on the other hand, addresses the situation in which the connection between the property and the drug activity is attenuated—where the property is not directly traceable to drug activity, but there is proof of the owner's involvement in certain kinds of drug activity—by creating a presumption that the property constitutes proceeds and, thus, is forfeitable. In the former situation, proof by a preponderance of the evidence, as in other civil cases, is all that is required; in the latter, by the express terms of section 297($l$ ), the proof as to those elements prerequisite to the establishment of the presumption must be shown by clear and convincing evidence.

### III.

Rule 8–131(a), pertaining to the scope of appellate review, provides:

(a) *Generally.*—The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

Although it recognized, at least implicitly, that section 297($l$ ) could apply to the facts *sub judice,* the Court of Special Appeals did not undertake to apply it in this case. Rather, construing that section only cursorily, the intermediate appellate court decided that another section, § 297(b)(4), was the applicable section and that the State's proof of its elements was sufficient.

The applicability of section 297(b)(4), and the sufficiency of the evidence with respect thereto, was not decided by the trial court, however. In denying the claimant's motion to dismiss for failure of the State to carry its burden of proof, made at the end of the State's case, the trial court found the State's

evidence to be sufficient to raise the statutory presumption. At the close of all the evidence, the trial court again ruled that it had already found that the State's evidence "gave rise to the presumption of [Joiner's] ownership [of the Mercedes Benz]," and that the only issue it had to resolve was whether the claimant had rebutted the presumption. Only section 297(*l*) explicitly prescribes a presumption; hence, notwithstanding that the presumption relates to what property is subject to forfeiture as proceeds, rather than to the ownership of the property, as the trial court stated, it necessarily was to section 297(*l*) to which the trial court referred. While section 297(s)(3) permits the court to resolve claims arising under section 297 and the ownership of property under certain circumstances may be, and in this case is, such a claim, neither section 297(b)(4) nor section 297(a)(9) [10] provides for a presumption of ownership *in lieu* of affirmative proof of that issue.

Moreover, it is far from clear that the section 297(b)(4) issue was even presented to, or raised in, the trial court. Not only does the State concede that it did not seek forfeiture pursuant to section 297(b)(4),[11] but the record reflects that, at the end of the State's case, having been invited by the trial court to expand upon its contention that the State had not met its burden of proof, the claimant referenced section 297(*l*)(1). The court then acknowledged that, "[t]here is a presumption, and it has to be rebutted...." Furthermore, the State's approach was the same as the claimant's. Its argument was that it had established that: (1) distribution of controlled

---

**10.** Section 297(a)(9) provides:
> (i) "Owner" means a person having a legitimate legal, equitable, or possessory interest in property.
> (ii) "Owner" includes:
>   1. A coowner;
>   2. A life tenant;
>   3. A remainderman to a life tenancy in real property;
>   4. A holder of an inchoate interest in real property; and
>   5. A bona fide purchaser for value.

**11.** This relieves us of the obligation of addressing the sufficiency of the evidence the State adduced to prove that proposition.

dangerous substances had occurred on Joiner's premises; (2) Joiner had no legitimate source of income, and (3) the Mercedes Benz was owned by Joiner, it having been sold to him about four months earlier by Bowers, the title owner. Implicit in its last point is that Joiner acquired the automobile during the time when he was distributing cocaine. Summing up, the State argued:

As I indicated, we showed that [Joiner] was in fact involved with the distribution of cocaine. We show[ed] that at the very least he came up with three thousand seven hundred dollars. Rational inference is that in fact that those are the proceeds of his drug activity he was involved in. And, therefore, our complaint is based upon the fact that this vehicle constitutes proceeds. And therefore I think we have in fact made our prima facie case regarding that issue.

At the close of all the evidence, the claimant again referred to section 297($l$), urging the trial court "not to impose this rebuttable presumption." He argued that the presumption did not apply "because under the Code Section that I've cited, we have sufficient information to show he's the owner." While not referring to section 297($l$) explicitly, the prosecutor, in rebuttal, acknowledged that "[t]he only question is whether or not this vehicle constitutes the proceeds of drug activity and that drug being cocaine." Clearly, therefore, neither party addressed the use of the Mercedes Benz as section 297(b)(4) would have required.

The Court of Special Appeals held that Corporal Leadbeter's testimony detailing the information he received from his confidential informant, his surveillance of Joiner's residence and other places, and his verification or corroboration of the information the informant provided was sufficient evidence of Joiner's involvement in the "sale, receipt, possession, or concealment of controlled dangerous substances," and that the Mercedes Benz was " 'used or intended for use, to transport, or in [some] manner to facilitate the transportation' of said substance." It found, in addition, that the trial court believed that testimony and that the claimant did not challenge its admissibility on appeal. These holdings are belied by the

record. First, as we have seen, the trial court's ruling was based on section 297($l$)(1), not section 297(b)(4). Furthermore, the record reflects that when Corporal Leadbeter first gave an indication that he would refer to information received from confidential informants, the claimant objected, arguing:

> But it's not first [hand] information, and to get it second hand from the officer, he has no first hand knowledge of what use either the vehicle has or whether Mr.—what Mr. Joiner's involvement is. And if it's coming directly from unnamed sources, we have a right to know who they are and actually they should be here to testify first hand.

As we have also seen, the trial court agreed and admitted the testimony to explain the witness' subsequent actions, not to prove Joiner's drug activity. Later, after the testimony relied upon by the Court of Special Appeals had been given, the claimant reminded the trial court of its prior ruling that the information from confidential sources was not admitted as substantive evidence. Neither the court nor the State challenged those remarks. *See Mejia v. State,* 328 Md. 522, 537, 616 A.2d 356, 363 (1993); *Henry v. State,* 324 Md. 204, 240–242, 596 A.2d 1024, 1042–43 (1991) (A party tacitly admits a fact when "(1) the party heard and understood the other person's statement; (2) at the time, the party had an opportunity to respond; (3) under the circumstances, a reasonable person in the party's presence, who disagreed with the statement would have voiced that disagreement."). Accordingly, it is clear that the evidence upon which the Court of Special Appeals placed such heavy reliance was neither offered to prove Joiner's involvement in drug activity, nor accepted by the trial court for that purpose.

### IV.

We turn now to the construction of section 297($l$)(1) and its application to the facts *sub judice.* The provisions of that section are clear and unambiguous: It is rebuttably presumed that property which a person owns or in which he or she has an ownership interest constitutes proceeds and, hence, is subject to forfeiture, whenever the State, by clear and

convincing evidence proves that: (1) the person has committed one or more of several enumerated controlled dangerous substances offenses; (2) the person acquired the property during the period in which, or within a reasonable time after, the violation or violations occurred; and (3) the violation was the only likely source of the property. The section 297(*l*)(1) presumption relates to the forfeitability of the property as proceeds; it does not address the property's ownership. In other words, the section 297(*l*)(1) presumption has no relevance to establishing ownership of the property. Who owns the property is an issue the resolution of which is dependent upon the adequacy of the evidence that each party adduces on that issue. No presumption of ownership derives from proof of criminal involvement; on the other hand, a presumption of forfeitability arises from proof that the property constitutes proceeds. *State v. One 1984 Toyota Truck*, 311 Md. 171, 184, 533 A.2d 659, 665 (1987). Once the presumption is raised, the burden shifts to the claimant to the property to rebut it. Because it is not otherwise specified, that burden, consistent with the burden in civil cases, is preponderance of the evidence. *Blue Bird Cab Company, Inc.*, 263 Md. at 659, 284 A.2d at 205.

■ Responding to the claimant's argument that it had not met its burden of proof, the State argued:

I think I have shown, Your Honor, that Mr. Joiner's apartment was searched pursuant to a search warrant. At the time the police seized from that apartment scales, razor blades, plastic bags, measuring spoons, all with traces of cocaine.

I provided the report of analysis which shows that in fact the traces were in fact the substance cocaine. That obviously—and based upon—also when you add to that the expert testimony provided by Detective Leadbeter that these are items which are used in distribution and not personal use, I believe I've established at that point in time distribution was in fact occurring on those premises and those were the premises of Mr. Keith Joiner.

Section 297(*l*)(1) references five controlled dangerous substances statutes, §§ 286, 286A, 286B, 286C and 290, which are a prerequisite to its application. Of those, four have no conceivable relevance to the case *sub judice*.[12] For § 286 to apply, the State's evidence must have established a violation of either subsection (a)(1) or (5).

Section 286, as relevant, makes it unlawful:

(1) to manufacture, distribute, or dispense, or to possess a controlled dangerous substance in sufficient quantity to reasonably indicate under all circumstances an intent to manufacture, distribute, or dispense, a controlled dangerous substance;

*    *    *    *    *    *

(5) to keep or maintain any common nuisance which means any dwelling house, apartment, building, vehicle, vessel, aircraft, or any place whatever which is resorted to by drug abusers for purposes of illegally administering controlled dangerous substances or which is used for the illegal manufacture, distribution, dispensing, storage or concealment of controlled dangerous substances or controlled paraphernalia, as defined in § 287(d) of this subheading.

*    *    *    *    *    *

As we have already seen, the search of Joiner's residence uncovered a small amount of marijuana and PCP, paraphernalia, and cocaine residue. Corporal Leadbeter, qualified as an expert, opined that possession of the latter two items[13] was

---

**12.** Because there is neither an allegation, nor proof, that Joiner brought any controlled dangerous substances into the State, section 286A does not apply. Similarly, the complaint did not allege, and the State did not even attempt to prove, distribution of noncontrolled substances. Accordingly, section 286B cannot apply. Section 286C applies only when minors are used in the drug activities. There was neither an allegation, nor proof that Joiner used minors in the distribution of cocaine. And, because these offenses are not implicated, patently, § 290, which proscribes attempts, endeavors and conspiracies pertaining to the foregoing offenses, cannot apply either.

**13.** While Corporal Leadbeter did not specifically mention the cocaine residue when he expressed his opinion, it is fair to assume that its

consistent with the distribution of cocaine. He was not asked and, therefore, did not state explicitly the significance of the small amount of marijuana and PCP. Whatever may be the significance of evidence of cocaine residue on controlled paraphernalia, the possession of which, based on expert testimony, is consistent with the distribution of cocaine, to the proof of section 286(a)(1), *i.e.,* that Joiner distributed or possessed with intent to distribute, cocaine, that evidence may be consistent with the maintenance of a common nuisance. *McMillian v. State,* 325 Md. 272, 296, 600 A.2d 430, 441 (1992). The expert opinion of Corporal Leadbeter, the cocaine residue and the controlled paraphernalia may suffice to establish that Joiner's residence was a place used for the illegal distribution and/or storage or concealment of cocaine and controlled paraphernalia. No additional evidence is required to establish the recurring nature of the offense, an essential element of the offense. *See McMillian,* 325 Md. at 294–96, 600 A.2d at 441–42.

The second prerequisite for that presumption is that the Mercedes Benz was purchased during the time that Joiner was engaged in the maintenance of a common nuisance or shortly thereafter. Aside from Corporal Leadbeter's testimony, the evidence to establish it consisted of a sales receipt, in the claimant's name, found in Joiner's bedroom and the testimony of Detective Whigham and the claimant, concerning the nature, and timing, of the transaction involving the Mercedes Benz, between Joiner and the claimant. According to Corporal Leadbeter, an informant told him that Joiner used a described Mercedes Benz, which he observed at Joiner's residence and other places, and in which he observed Joiner, on one occasion. Both Whigham and the claimant testified that possession of the Mercedes Benz was delivered to Joiner, a matter never in dispute. They also agreed that, consistent with the sales receipt, that transfer would have occurred sometime in May, 1990. The investigation into Joiner's drug

presence was relevant to, and, indeed, colored, that opinion, especially with respect to what substance was being distributed.

activities began in June 1990, a fact which the claimant finds most significant.[14]

As to the proof of the third factor—that the drug activity is the only source of the property—the only evidence adduced was Corporal Leadbeter's testimony that when he called Hollywood Car Care he was told that Joiner did not work there.[15]

Unlike in the ordinary forfeiture case, section 297(*l*) requires that the prerequisites for the presumption of forfeiture and, if not rebutted, for forfeiture, be established by clear and convincing evidence. Although we have not heretofore had the occasion to apply this standard of proof in a forfeiture case, this Court has applied it in a variety of other contexts. *See e.g., Owens–Illinois v. Zenobia*, 325 Md. 420, 601 A.2d 633 (1992) (proof of punitive damages); *Everett v. Baltimore Gas & Electric*, 307 Md. 286, 301–04, 513 A.2d 882, 889–90 (1986) (fraud); *Washington County Department of Social Services v. Clark*, 296 Md. 190, 192–99, 461 A.2d 1077, 1078–81 (1983) (termination of parental rights); *Coard v. State*, 288 Md. 523, 525, 419 A.2d 383, 383–84 (1980) (commitment hearings). *See Mack v. Mack*, 329 Md. 188, 207–09, 618 A.2d 744, 753–755

---

**14.** The claimant argues, of course, that, if the requirement is that the purchase be made during the time of the drug activity, or shortly thereafter, evidence that shows that the property was purchased prior to the start of the investigation is insufficient. In other words, unlike the State, the claimant takes the position that, to be clear and convincing evidence of a purchase during the period, the evidence be must "strong, positive and free from doubt," *Berkey v. Delia*, 287 Md. 302, 318, 413 A.2d 170, 178 (1980), quoting *Stone v. Essex County Newspapers, Inc.*, 367 Mass. 849, 330 N.E.2d 161, 175 (1975), both with respect to the fact of purchase and the timing of the purchase.

**15.** It is unclear whether, as the State contends, Corporal Leadbeter testified that, in his opinion, based on his firsthand knowledge, Joiner was not engaged in any legitimate business activities. On direct examination, the prosecutor asked: "As part of your investigation of Mr. Keith Joiner from your firsthand knowledge only, were you able to establish whether, as the State contends, or not Mr. Joiner engaged in any legitimate business activities?" After the claimant's objection had been overruled, the witness answered, "No." It is clear that, on cross-examination, he acknowledged that he did not keep Joiner under surveillance for 24 hours and, thus, did not know for a fact what legitimate activity Joiner might have been involved in.

(1993) (withdrawal or withholding of life-sustaining medical treatment); *Attorney Grievance Commission v. Powell,* 328 Md. 276, 287, 614 A.2d 102, 108 (1992) (attorney discipline); *Wentzel v. Montgomery Gen. Hosp., Inc.,* 293 Md. 685, 703, 447 A.2d 1244, 1253–54 (1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 790, 74 L.Ed.2d 995 (1983) (sterilization of incompetent ward); *Delia,* 287 Md. at 318–19, 413 A.2d at 178 (libel and slander). This "heightened standard," *Zenobia,* 325 Md. at 469, 601 A.2d at 657, requires "a degree of belief greater than the usually imposed burden of proof by a fair preponderance of the evidence, but less than the burden of proof beyond a reasonable doubt imposed in criminal cases." *Delia,* 287 Md. at 318, 413 A.2d at 177. That level of proof has been characterized as "strong, positive and free from doubt." *Id.,* quoting *Stone v. Essex County Newspapers, Inc.,* 367 Mass. 849, 330 N.E.2d 161, 175 (1975). We have also said that, to be clear and convincing, "the proof must be 'clear and satisfactory' and be of such a character as to appeal strongly to the conscience of the court." *First National Bank v. U.S.F. & G. Co.,* 275 Md. 400, 411, 340 A.2d 275, 283 (1975).

We adopt the definition of clear and convincing evidence applied in other contexts, for application in forfeiture cases. Reviewing the evidence adduced by the State to prove the requisite elements for the presumption of forfeiture, and ultimately, for forfeiture, in light of a clear and convincing evidence standard produces a clear result: the State failed to prove at least two of the elements.[16]

Section 297(*l* ) requires that the property, which is the subject of the forfeiture proceedings, be purchased during the time of the criminal involvement or shortly thereafter. The evidence adduced, however, tended to prove that the property was purchased prior to the initiation of the investigation

---

**16.** The evidence of Joiner's criminal activity is arguably sufficient. Indeed, had Joiner been charged with maintaining and keeping a common nuisance, the evidence might have been sufficient to find him guilty of that offense beyond a reasonable doubt. *See McMillian,* 325 Md. at 294–96, 600 A.2d at 441–42.

hence, prior to the criminal activity proven. While the evidence of criminal activity may have been sufficient, proof of the transfer of the automobile came before, not after, nor even during the criminal involvement. We agree with the claimant, to be clear and convincing, the evidence of that element necessarily must be precise as to when the purchase occurred.

The evidence as to the source of the property is even more glaringly deficient. The State was required to prove a negative: that there was no other likely source of the property. That burden is affirmative, not passive. As such, it is not met by failing to adduce evidence on the issue, when the record reflects only a lack of any proof on the issue. In other words, the State's burden is to produce evidence that there is no other likely source for the property; it simply cannot rely on the absence of evidence. In this case, a search of the Mercedes Benz uncovered business cards, with Joiner's name on them, for a car detailing establishment. The natural inference to be drawn from these cards is that Joiner was connected with that company in some way. The only evidence the State offered to rebut that inference was Corporal Leadbeter's testimony, given without objection, that he called the establishment and was told that Joiner did not work there. That testimony was far from detailed. The State did not elicit to whom Corporal Leadbeter spoke or exactly what questions he asked. Because the Mercedes Benz was seized after Joiner's death, so too was the call to the car detailing company. Thus, it was certainly true that Joiner did not work there at that time. On the other hand, that answer did not shed any light on whether he ever worked there or otherwise had an interest in the business. On this issue, the testimony was vague at best. Patently, such vague testimony does not rise to the level of clear and convincing evidence.[17]

---

17. In its brief in the Court of Special Appeals, the State argued, with respect to whether the claimant proved an ownership interest in the Mercedes Benz:

> If the Court of Appeals [sic] finds no error in the determination of ownership, the appellant [the claimant] can not argue the merits of the case, only the true owner (the Estate of Keith Delante Joiner) can

*JUDGMENT REVERSED. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.*

---

argue the merits of the case. The State lost that right when their [sic] Answer was stricken due to the failure to provide discovery. Furthermore, the Estate failed to appear at the hearing and address the merits of the case.

State's brief in Court of Special Appeals at 11–12. No such argument is made in this Court and we do not address it.