641 A.2d 941

Pamela Snowhite DAVIS

v.

STATE of Maryland.

No. 840, Sept. Term, 1993.

Court of Special Appeals of Maryland.

June 2, 1994.

370

Daniel F. Goldstein (Brown, Goldstein & Levy, on the brief) Baltimore, for appellant.

Michael D. Berman and Susan Goering, Baltimore, for amicus curiae, The American Civil Liberties Union of Maryland, Inc.

David P. Kenney, Asst. Atty. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Thomas E. Hickman, State's Atty. for Carroll County, Westminster, on the brief), for appellee.

Submitted before MOYLAN, HARRELL and MURPHY, JJ.

HARRELL, Judge.

The Carroll County Drug Task Force (the Task Force) searched the home of a locally notorious advocate of marijuana legalization, Pamela Snowhite Davis, appellant. The harvest of that search led to appellant's indictment for possession of marijuana with intent to distribute, possession of marijuana, possession of paraphernalia, and maintaining a common nuisance. A jury in the Circuit Court for Carroll County convicted appellant of the simple possession, paraphernalia, and common nuisance counts. She was acquitted of the intent to distribute charge.

On 8 April 1993, appellant filed a Motion for New Trial. The court denied the motion on 28 April 1993, sentenced Davis, and refused bond pending appeal. On 30 April 1993, Davis noted a timely appeal to this Court.

In the meantime, following 56 days of incarceration, Davis was released on habeas corpus by the Circuit Court for Anne Arundel County. Appellant then filed a Motion to Modify Sentence, which was heard subsequently and denied by the Circuit Court for Carroll County on 14 October 1993. Appellant next filed a Motion to Review the Sentence. The motion was heard and denied by a three-judge panel of the Circuit Court for Carroll County on 25 October 1993.

## *ISSUES*

We have re-organized and re-phrased Davis's arguments on appeal as follows:

I.  The trial court erroneously determined that good cause had not been shown to hear appellant's motion to suppress.

    A.  Because appellant never waived her right to counsel, the circuit court's failure to advise appellant of the availability of a court-appointed counsel violated appellant's right to counsel.

    B.  The failure to advise appellant of her right to counsel constituted good cause to waive the thirty-day limitation for filing a motion to suppress.

II. Insufficient evidence existed to convict appellant of maintaining a common nuisance.

III. The trial court incorrectly instructed the jury on the elements of common nuisance.

IV. The trial court improperly admitted evidence that members of appellant's family believed in the legalization of marijuana and criticized the government's illegal drug prevention and enforcement efforts.

V. The prosecutor's improper remarks during closing arguments warranted reversal.

VI. The trial court considered impermissible matters when making its sentencing determination.

Based on the totality of circumstances set forth in the record, we hold that the trial court committed reversible error by refusing or failing to consider properly appellant's motion to suppress following her demonstration that the court earlier had failed to resolve, in timely fashion, the issue of whether she was entitled to court-appointed counsel. Because we shall remand the case based on our reversal as to Issue I, we need only consider additionally Issue II. Accordingly, we shall not reach appellant's other issues.

## *FACTS*

Our recitation of the facts is limited to those relevant to the issues we consider. This case arose following execution by the Task Force, on 7 May 1992, of a warrant to search appellant's residence, known as Terrapin Station, located at 1144 Humbert's Schoolhouse Road in Carroll County. Ms. Davis occupied the residence with three other individuals, including her son, Kif Davis, and daughter, Sara Davis. The Task Force had received information from an informant at the United Parcel Service that UPS had a package, addressed to appellant's residence but directed to no particular person residing there, containing 1.5 ounces of marijuana. A Task Force officer, disguised as a United Parcel Service (UPS) employee, delivered the package to Ms. Davis's residence. A short time

after Sara Davis signed for the package, the Task force raided Davis's home searching for evidence of other contraband.

The search uncovered, *inter alia*, two bags of what later was determined to be marijuana (totaling 25.8 grams—28 grams equaling one ounce), rolling papers, and marijuana seeds in the nightstand next to appellant's bed. The police also found in the bathroom closet adjacent to appellant's bedroom two bogus STP (an engine oil additive) containers of the kind commonly advertised as devices to hide valuables.

In another room of Davis's residence, the police found various items they later used in an effort to convict appellant. Among the items found were a bag containing marijuana cigarette butts, or "roaches", a water pipe (or bong), and marijuana seeds and stems hidden in a film canister, as well as a number of posters, photographs, and publications, the subject matter of which focused on marijuana. In a barn adjacent to appellant's residence, the police found a phototron, or plant growth light, which appeared to contain a marijuana leaf.

During the 7 May 1992 raid, Sara, Kif, and Ms. Davis were arrested by Task Force members.[1] The possession charge against Sara Davis eventually was dropped following a successful bid by her attorney to suppress the evidence recovered from the residential search. Kif Davis, who had been caught eating the delivered marijuana on the rooftop of the residence at the time of the search, pleaded guilty to a possession of marijuana charge.

The "fruits" of the search resulted in the 19 June 1992 grand jury indictment of appellant for possession of marijuana with intent to distribute, maintaining a common nuisance, possession of marijuana, and possession of controlled substance paraphernalia. On 30 July 1992, appellant appeared before the Circuit Court for Carroll County without the benefit of representation. After the court's recitation of the

---

1. The fourth resident of Terrapin Station, Ms. Claudia Roll, was arrested approximately one week after the search. The misdemeanor charge against her for marijuana possession was dropped due to insufficient evidence.

charges against her, the following dialogue ensued between Davis and the court:

COURT: Do you have an attorney, Ms. Davis?

DAVIS: I do not.

COURT: Do you plan to have one?

DAVIS: I cannot afford an attorney, a private attorney, and I do not qualify for a Public Defense, because I am a property owner and have considerable assets, which are—basically, my assets cannot be borrowed against. Because of the State's action against me, the bank, who has handled my personal line of credit, has frozen my line of credit, and so, I intend to defend myself in this action.

COURT: All right. You know your trial date is September 23, 1992. Is that correct?

DAVIS: Yes, sir, I do.

COURT: Whether you plan to plead guilty or innocent to these charges, an attorney can help you present your case in a light most favorable to yourself. You say that the Public Defender says you have too many assets.

DAVIS: That's my understanding, that my assets exceed that which would be considerable . . .

COURT: All right.

DAVIS: . . .—considered, you know to entitle me to a defense by public taxpayer money.

. . . . .

COURT: The Court strongly urges that you be represented by an attorney, but that's a decision that you'll have to make in either event. If you appear for trial on the date of trial,—look at that again—September 23rd, 1992, without an attorney, the Court could deem that you waived your rights to one and proceed and try you that day without an attorney.

DAVIS: I understand that.

* * * * * *

The court asked Davis whether she understood the offenses with which she had been charged. Upon her affirmative

answer, the judge released her until the scheduled 23 September 1992 trial date. No further explanation or information was provided to Davis by the court concerning her right to seek court-appointed counsel, her right to judicial review of any refusal of the Public Defender to represent her, or the thirty-day period within which to file any mandatory motions.

Appellant applied for representation by the Public Defender. By letter dated 18 September 1992, however, the Public Defender notified Davis that her "financial status exceed[ed] the standard of eligibility for representation by this office." Apparently, the information shared by Ms. Davis with the court during her 30 July appearance was gained from preliminary conversations with the Public Defender's office.

On 21 September 1992, the trial originally scheduled for 23 September was postponed. By letter dated 22 September 1992, Davis requested the court to consider an oral motion to suppress the evidence obtained during the 7 May 1992 search of her residence. The court denied her motion and directed her to Maryland Rule 4–252 governing the thirty-day filing period for mandatory motions. On 23 September 1992, appellant responded by filing a Request for Waiver of Thirty Day Mandatory [sic] Filing Period & Request for Hearing." On 21 October 1992, the court summarily denied the request without deciding whether she had shown good cause to waive the statutorily imposed period. On 19 November 1992, Davis filed a Motion for Reconsideration and a Motion for Recusal of the trial judge who had considered her prior motions.

Appellant's trial had been re-scheduled for 24 November 1992. On that date, however, a commercial enterprise owned and operated by appellant was searched, and she was arrested for the display and possession of sterilized hemp seeds. Although Davis subsequently was acquitted of this additional charge, she was incarcerated when trial on the original charges was to begin. At the request of the judge reviewing Davis's bail for the charges against her resulting from the 24 November 1992 search, the trial court convened a hearing to

determine whether Davis was in a condition to represent herself in a jury trial that morning.

During the 24 November 1992 hearing, appellant re-emphasized to the court that she had no money to pay for an attorney. The court, for the first time, explained to appellant that she was entitled to make a motion for a court-appointed counsel in the event she could find no other representation. Over the objections of the State, and based on appellant's statements concerning her desire for counsel, the court postponed the trial.

Despite the trial continuance, Davis requested that the court consider her Motion for Reconsideration of the court's denial of her former motion to suppress. She agreed to a postponement of the motion's consideration, however, when the court advised appellant that it would be more appropriate for her counsel to argue it.

On 30 November 1992, Davis filed a *pro se* Motion to Suppress and Motion to Dismiss. In its Answer to that motion, the State asserted, *inter alia,* that appellant's "delay of 93 days in the filing of this Motion is due to her own inaction...." The State also moved to strike the motion, arguing that all of appellant's motions to suppress, including the current one, should be considered untimely under Maryland Rule 4-252.

Private counsel entered their appearance on behalf of appellant two days before her jury trial was scheduled to begin. Immediately prior to the commencement of trial on 24 March 1993, appellant's counsel renewed the motion to suppress. Counsel for Davis asserted that although Davis had been informed of her constitutional right to counsel during the 30 July 1992 appearance, the court failed to advise her of the thirty day rule for filing mandatory motions. In addition, appellant's counsel argued that the circuit court improperly denied appellant's request for a hearing concerning the previously-filed motion based on the factual disputes presented by appellant, demonstrating good cause to excuse her from the constraints of the mandatory motion filing period.

In contrast, the State argued that the trial court was required to presume that the judge who considered Davis's motion reviewed appellant's arguments prior to his denial of Davis's motion and request for a hearing. Moreover, the State insisted that appellant's claimed ignorance of the thirty-day mandatory motions filing period provided her with no excuse, because she chose to proceed *pro se* during that period. The trial court agreed with the State's position and denied appellant's Motion to Suppress.

At trial, the State argued, *inter alia*, that the evidence found by the Task Force during the 7 May 1992 search proved that narcotics offenses of a continuing nature occurred in Davis's residence. In support of its position, Maryland State Trooper Donald Grimes and Maryland State Police Sergeant John Burton, both Task Force members, were qualified and testified as experts in the area of drug identification and investigations. Sergeant Burton, due to his previous under-cover narcotics work, also qualified as an expert in covert drug operations.

Trooper Grimes testified that, in his expert opinion based on the results of the 7 May 1992 search, appellant's residence had been used as "a party place for a lot of people to come over, sit around and have parties, and—and smoke marijuana." According to Trooper Grimes, "the quantity [approximately one ounce of marijuana] ..., the numerous rolling papers ..., [and the] large water bong that ... [were] seized" served as indicative evidence that the Davis residence had been used for marijuana parties. Specifically in reference to the recovered bong, Trooper Grimes stated, "it's basically lit up and passed around, or people will walk up to it as it's sitting on a table and take what they call a hit off of it."

Sergeant Burton, the Task Force Supervisor, confirmed the conclusions reached by Trooper Grimes concerning the frequency of narcotics offenses occurring at appellant's residence. He described, in detail, how the recovered items suggested that Davis's residence had been used for marijuana parties. Like Trooper Grimes, Sergeant Burton cited the bong as an

item "typically used at marijuana smoking parties." Sergeant Burton concluded that, based on the totality of items recovered from the search, appellant's residence was a place where the "continuous use of using marijuana" occurred.

Appellant elected not to testify in her own defense. No defense witnesses conclusively confirmed or denied the allegations made by Trooper Grimes and Sergeant Burton. Two of appellant's neighbors, however, did testify, as part of the defense case, that when they had occasion to frequent Davis's house they had observed no marijuana or marijuana plants. Moreover, they had observed no marijuana use, even at parties they had attended there. Finally, one of the neighbors, Mr. Doyle, asserted that his dogs would have barked if strangers had visited the Davis home and they did not bark. Following the parties' closing arguments and denial of appellant's motion for judgment of acquittal, the trial court turned the case over to the jury for its consideration.

Of the four offenses with which appellant was charged, the jury convicted her of maintaining a common nuisance, possession of marijuana, and possession of drug paraphernalia. The court sentenced Davis to five years incarceration, with all but two years suspended, for maintaining a common nuisance, with one year concurrent for possession of marijuana, together with five years probation and a fine of $2,500.00. For her possession of drug paraphernalia, the court fined appellant $500.00.

## I.

Appellant contends that the trial court committed reversible error by failing to waive the thirty-day limitation for filing a motion to suppress, because she demonstrated the requisite good cause. She argues that the trial court's failure to inform her of the right to a court-appointed counsel during her initial appearance constituted good cause to waive the limitation period. According to Davis, this mishap by the trial court left her ignorant as to both the availability of counsel and the limited period during which to file a motion to suppress.

A.

Maryland Rule 4–215(a) (1994) governs procedures that a court must follow to determine waiver of counsel by a criminal defendant. It states, in pertinent part:

> **First Appearance in Court Without Counsel.**—At the defendant's first appearance in court without counsel, . . ., the court shall:
>
> (1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.
>
> (2) Inform the defendant of the right to counsel and of the importance of assistance of counsel. . . .
>
> (4) Conduct a waiver inquiry . . . if the defendant indicates a desire to waive counsel.
>
> (5) If trial is to be conducted on a subsequent date, advise the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel.

The requirements of this Rule are mandatory. *Argabright v. State,* 75 Md.App. 442, 457, 541 A.2d 1017 (1988). Reversible error is committed when a trial court fails to advise a defendant of his or her right to counsel and the defendant does not indicate a desire to waive counsel. *Evans v. State,* 84 Md.App. 573, 580, 581 A.2d 435 (1990).

In Maryland, there are two options available to defendants in criminal cases who are financially unable to retain their own counsel. The first option is representation by the Public Defender's Office as authorized by Maryland Annotated Code, Article 27A, § 4 (1993 Repl.Vol.). If the Public Defender's Office determines it is unable to represent a defendant due to his or her income, the court must conduct its own inquiry as to whether the defendant qualifies for a court-appointed counsel. Md.Code Ann. Art. 27A, § 6(f) (1993 Repl.Vol.); *Baldwin v. State,* 51 Md.App. 538, 553, 444 A.2d 1058 (1982), *cert. denied* 299 Md. 425, 474 A.2d 218 (1984). The necessity for this independent court evaluation stems from the judiciary's role

as the "ultimate protector" of the rights awarded under the Constitution, including the right to counsel. *Baldwin,* 51 Md.App. at 552, 444 A.2d 1058.

The court must employ the same statutory criteria used by the Public Defender to assess indigency eligibility for court-appointed counsel. The criteria are set forth in Article 27A § 7 of the Annotated Code of Maryland which states:

> Need shall be measured according to the financial ability of the person to engage and compensate competent private counsel and to provide all other necessary expenses of representation. Such ability shall be recognized to be a variable depending on the nature, extent and liquidity of assets; the disposable net income of the defendant; the nature of the offense; the effort and skill required to gather pertinent information; the length and complexity of the proceedings; and any other foreseeable expenses.

While it must use the same statutory standards in making its decision to award court-appointed counsel, we have held that the court "is not restricted to the information relied upon by the Public Defender, or the Public Defender's evaluation of such information." *Baldwin,* 51 Md.App. at 553, 444 A.2d 1058. Indeed, the court "should consider any information offered by the parties which may reasonably bear upon the defendant's ability to afford private counsel and make its own evaluation of the relevance and credibility of such information and the weight to be accorded it." [2] *Id.*

The record clearly demonstrates that Davis did not waive her right to counsel. During her 30 July 1992 initial appearance, Davis unequivocally stated to the court that she could not afford a private attorney and that her income and assets precluded representation by the Office of the Public

2. The *Baldwin* court also noted that Article 27A, § 7 does not require the court to conduct a lengthy and complicated inquiry. Rather, the court may elect to simply hear from the the defendant and the Public Defender without requiring testimony under oath. *Baldwin,* 51 Md. App. at 553, 444 A.2d 1058.

Defender.[3] In response, the judge merely stated, "The Court

---

3. It might be argued that *Baldwin* is factually distinguishable from the instant case. Baldwin, facing a new trial after his initial convictions were reversed in an earlier appeal in which he had been represented by private counsel, applied for representation to the District Public Defender's Office using a form supplied by that office (which form was not in the record). *Baldwin,* 51 Md.App. at 540, 444 A.2d 1058. The Public Defender declined representation and a hearing was conducted by the circuit court on 15 June 1981, the date of Baldwin's initial appearance before the court for purposes of the new trial, concerning the Public Defender's decision and Baldwin's eligibility to have "the Court ... give you [Baldwin] a free lawyer, even though the Public Defender does not." *Id.* at 541, 444 A.2d 1058. At the conclusion of that hearing, the court determined that Baldwin could afford to obtain his own attorney "or, at his option, to proceed without counsel." *Id.* at 544, 444 A.2d 1058.

When trial commenced on 29 July 1981, Baldwin, still without counsel, proffered a written declaration explaining why he did not have an attorney, asserting his incompetence to represent himself, and requesting that the court appoint an attorney to represent him. *Id.* at 544–45. Finding no change in circumstances since the 15 June hearing, the court denied Baldwin's request.

It may be argued that Davis's statements to the circuit court in the case *sub judice,* as to her desire to have counsel appointed, are equivocal enough, when compared to Baldwin's statements, that Davis failed to adequately assert her perceived right to counsel and thus trigger the court's obligation to conduct an inquiry into her eligibility *vel non* to receive court-appointed counsel. Such an argument would, we believe, be wide-of-the-mark and without substantial merit.

It is not possible from a reading of *Baldwin* to say that Baldwin's expression of his desire to have counsel provided at public expense is any more or less clear, as of the time of his initial appearance when the court made its initial decision on that matter, than were Davis's conduct and declarations prior to the expiration of the mandatory motions filing deadline. Davis, too, had applied to the Public Defender for counsel. Her explanatory advice to the court at her initial appearance, on 30 July 1992, clearly revealed that it was her opinion that she could not afford an attorney because such assets as she had were unavailable to her through a combination of the State's conduct in freezing her bank credit line or her inability to borrow against, for unspecified reasons, whatever other assets may have escaped the State's action. It is manifest to us that Davis's announced intention to defend herself at that point in time was borne of her ignorance of the fact that the court must conduct the kind of inquiry that the circuit court in *Baldwin* conducted, and her mistaken belief that she had no options left. Regardless of whether Davis's statements, occurring at the crucial time in her proceedings as they did, fall short of the degree of clarity of expression of Baldwin's much later trial declaration, it is our view that the trial court was sufficiently on notice of Davis's perceived predicament to have required it to perform its duties under *Baldwin.*

strongly urges that you be represented by an attorney, but that's a decision that you'll have to make in either event." The court did not conduct the required inquiry, despite appellant's indication that the Public Defender's Office would not represent her.[4]

In contrast, on 24 November 1992, a different judge thoroughly explained to Davis the appropriate inquiry it was required to conduct to determine whether she qualified for court-appointed counsel. Her later appearance before the trial court illustrates the error committed by the judge during her initial appearance.

It is no surprise that this record is virtually devoid of any facts regarding appellant's financial condition vis-a-vis her eligibility for representation by the Public Defender's Office or court-appointed counsel. The court conducted no inquiry. The basis for the Public Defender's decision remains unexplained, as well as unexamined. Ms. Davis, at that time, may have been an otherwise well-to-do person whose liquid assets were simply frozen. On the other hand, she may have been functionally impecunious. We simply do not know. For present purposes, though, it does not matter what the answer may

---

Any equivocation in Davis's remarks should have been resolved by the court executing a timely and full inquiry into the proper exercise of her Constitutional right to counsel. As Chief Judge Wilner observed in *Baldwin:*

> If, because of some unarticulated suspicion that appellant had command over resources that could be devoted to the obtention of private counsel, the court was in any way in doubt about the matter of his indigence, it should have heeded the advice we gave in *Laquay v. State,* 16 Md.App. 709, 725 [299 A.2d 527] (1973): "It is suggested that if there be real uncertainty, it be resolved by providing the assistance of counsel rather than denying it."

*Baldwin,* 51 Md.App. at 555–56, 444 A.2d 1058.

That same spirit is what compels our conclusion here.

**4.** At the time of the 30 July 1992 hearing, we assume that appellant and the Public Defender's Office had discussed her eligibility, or lack thereof. The official letter, informing appellant of its refusal to represent her, was not written by the Public Defender's Office until 18 September 1992. We acknowledge, therefore, that this official rejection notification could not have been received by Ms. Davis until at least nineteen days *after* the mandatory motion filing deadline had passed.

have been. What is germane is that, under the circumstances present here, the court erroneously failed to conduct a timely review of the Public Defender's declination to provide representation and to determine her eligibility for court-appointed counsel before the expiration of the mandatory motion filing deadline.[5] The prejudice worked upon appellant by this error will next be addressed.

B.

Alternately, the State acknowledges the trial court's mistake, but maintains that the error was harmless because appellant was represented at trial. What the State neglects to account for was that Davis was without the benefit of counsel during the entire mandatory motion filing period. We are unwilling to assume, as the State argues we should, that as a criminal defendant involuntarily proceeding *pro se* appellant "reasonably might have learned within the thirty-day time period that she would have to file a motion to suppress."

We have recognized that Maryland Rule 4–252 is directed specifically at suppression motions in criminal cases. *Jackson v. State,* 52 Md.App. 327, 331, 449 A.2d 438 (1982). The Rule dictates that a defendant's opposition to the admission of evidence resulting from an unlawful search and seizure "shall be raised by motion in conformity with this Rule and if not so raised [is] waived unless the court, for good cause shown orders otherwise...." Md.Rule 4–252(a) (1994). The Rule further requires that such motions "shall be filed within

5. It is possible, at least in the instant case, that had the judge presiding at the 30 July 1992 initial appearance of Davis advised her of the mandatory motions period, prejudice to Davis could have been averted. Davis's knowledge of the potential significance of a motion to suppress was admittedly first made manifest to her on 29 July 1992 when she witnessed her daughter's attorney successfully assert an oral motion to suppress in the daughter's District Court case. This would be no general panacea, however, for the broad spectrum of defendants in similar circumstances that lacked Davis's intelligence and articulateness. We think, on balance, requiring a trial judge to bring to timely resolution the question of a defendant's constitutionally-based right to counsel is a preferable requirement than to insist that judges render legal advice on procedural or substantive law aspects of a case.

30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court...." Md. Rule 4–252(b). Failure to make a mandatory motion within the prescribed time limits, absent good cause to forgive the dereliction, bars all claims, even those full of constitutional merit. *Carbaugh v. State,* 49 Md.App. 706, 709, 435 A.2d 116 (1981), *aff'd,* 294 Md. 323, 449 A.2d 1153 (1982), *quoting Pulley v. State,* 43 Md.App. 89, 97, 403 A.2d 1272 (1979).

Thus, in order to waive the thirty-day period, defendants must show good cause for failure to comply with the time requirements for filing mandatory motions under Rule 4–252. *Jones v. State,* 42 Md.App. 209, 214, 400 A.2d 1, *rev'd on other grounds,* 286 Md. 540, 410 A.2d 16 (1979). We have held in the past that absence of counsel will not constitute good cause *where the failure to obtain it and file the mandatory motion was due to nothing more than the defendant's own inaction. Id.* (Emphasis added) (appellant not entitled to argue motion to suppress where the court advised him "of his right to counsel and of the availability of the Public Defender or other court appointed counsel in the event that he was unable to afford private counsel"). Had the court, in the instant case, after due inquiry and consideration, determined before the expiration of the mandatory motion filing period, or even before it refused to consider on its merits her late-filed motion to suppress, that appellant was not entitled to an attorney at the taxpayers' expense, we would have been presented with a much different scenario, more akin to non-representation through a defendant's own inaction.

In the instant case, the record is devoid of any in-depth consideration by the court of Davis's requests for waiver of the thirty-day mandatory filing period. On 21 October 1992, the circuit court summarily denied appellant's request without explanation. The request for waiver was not reconsidered until the date of trial when the court, in denying appellant's request, stated that if an individual chooses to "sail the stormy seas of circuit practice ... without the benefit of the navigational guides ... [such as] the Maryland Rules of Procedure, they do so at their own peril."

While we do not disagree with the trial court's statement *per se*, we do not advocate the position that a criminal defendant must "sail the stormy seas of circuit practice" without the benefit of an "able captain" if the defendant did not so intend. The peril should only apply to those criminal defendants who knowingly and voluntarily waive their rights to counsel or who, able to retain private counsel, decline to do so.[6] We have concluded already in the instant case that no waiver occurred and the hearing court erred in failing to conduct the necessary inquiry.

The trial court had the opportunity to alleviate the effect of the hearing court's earlier error through a proper appraisal of appellant's request to waive the mandatory filing period for a motion to suppress. We hold that, under the facts of this case, the trial court's failure or refusal to consider the hearing court's earlier mistake in not obtaining a timely closure of the issue of appellant's entitlement to court-appointed counsel constituted prejudicial error. Therefore, we remand the case to the circuit court for its proper consideration of Davis's Motion to Suppress consistent with our determination that good cause existed to excuse Davis from the time constraints imposed by Rule 4–252.[7]

## II.

Although we are remanding this case to the circuit court, we also need to address the sufficiency of the evidence claim

6. Indeed, in the case *sub judice*, the assistance of counsel may have proven crucial to the timing of filing and the resolution of appellant's motion to suppress. This is especially noteworthy when one considers the outcome of Sara Davis's suppression hearing.

7. We do not remand the case for a review of the Public Defender's decision not to represent appellant because she is no longer asserting directly the deprivation of her constitutional right to counsel as an issue on appeal. That issue is moot and is something that the court need not consider on remand. The hearing court's failure to resolve whether Davis was entitled to court-appointed counsel is presently significant only as it relates to the consideration of Davis's motion to suppress.

presented by Davis on appeal. The test we apply in our review of such a claim is whether, viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. *Wiggins v. State,* 324 Md. 551, 567, 597 A.2d 1359 (1991). The evidence must directly establish or support "a rational inference of the facts to be proved, from which the trier of fact could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged." *Wilson v. State,* 319 Md. 530, 535–36, 573 A.2d 831 (1990). In this regard, weighing the evidence, determining the credibility of witnesses, and drawing reasonable inferences from the facts are matters for the trier of fact. *Wiggins,* 324 Md. at 567, 597 A.2d 1359.

The only sufficiency claim asserted by Davis on appeal pertained to her conviction for maintaining a common nuisance. According to the Maryland Code, Article 27, § 286(a)(5) (1957, 1993 Repl.Vol.), it is a crime

> to keep or maintain any common nuisance which means any dwelling house, apartment, building, . . ., or any place whatever which is resorted to by drug abusers for purposes of illegally administering controlled dangerous substances or which is used for the illegal manufacture, distribution, dispensing, storage or manufacture, distribution, dispensing, storage or concealment of controlled dangerous substances or controlled paraphernalia, as defined in § 287(d) of this subheading.

The essential element of the common nuisance offense under this statute is its recurring nature. *Skinner v. State,* 16 Md.App. 116, 129, 293 A.2d 828, *cert. denied,* 267 Md. 744 (1972). "The essence of this crime is the potential danger to the public posed by the continuing and recurring character of the offense on such premises." *McMillian v. State,* 325 Md. 272, 294, 600 A.2d 430 (1992).

Evidence found on a single occasion, however, may be sufficient to demonstrate a crime of a continuing nature. *Hunt v. State,* 20 Md.App. 164, 167, 314 A.2d 743. For

example, in *Hunt v. State,* we held that evidence seized from the defendant's home on one occasion was sufficient to convict him of maintaining a common nuisance. *Id.* at 167, 314 A.2d 743. In *Hunt,* the police found, *inter alia,* a cellophane bag containing heroin, several measuring spoons, several empty glassine bags, a small envelope of marijuana, and 250 glassine bags of heroin, in ten bundles each, consisting of 25 bags. *Id.* at 165, 314 A.2d 743. In addition, during the same search, the police discovered personal papers belonging to the defendant which, according to the testimony of a police narcotics expert, proved that defendant was engaged in a large scale distribution operation from his residence. *Id.* at 165–66, 314 A.2d 743. The notations made on defendant's papers outlined amounts owed for drug purchases by potential buyers. *Hunt,* 20 Md.App. at 165, 314 A.2d 743.

In a more recent case, *McMillian v. State,* the Court of Appeals held that testimony relating police observation, occurring on a single day within a four hour period, in addition to the seizure of seventy-two grams of cocaine, constituted evidence sufficient to convict a nightclub manager of maintaining a common nuisance. *McMillian,* 325 Md. at 296, 600 A.2d 430. According to police testimony, they "observed the consummation of a number of drug transactions involving a number of different, transient buyers." *Id.* Moreover, the defendant in *McMillian* admitted his involvement with the drug activity occurring at the nightclub. *Id.*

Absent other supporting evidence that the offenses are recurring in nature, however, we have held consistently that possession of controlled dangerous substances and paraphernalia alone is insufficient to sustain a conviction for maintaining a common nuisance. *See e.g., Nickens v. State,* 17 Md. App. 284, 291, 301 A.2d 49 (1973) ("No testimony was elicited concerning the presence of any of these items at anytime other than on the day they were seized. No testimony was introduced showing any violations occurring prior to the time the police executed their search"); *Nutt v. State,* 16 Md.App. 695, 708, 299 A.2d 468 (1973) (the evidence introduced at trial

was limited to the introduction of articles seized at the time of search[8] and "testimony or stipulation as to their description, use and, as to some, their chemical properties"); *Skinner,* 16 Md.App. at 124, 293 A.2d 828 (only evidence offered by the State to support the conviction against the defendant was that the contraband drugs and paraphernalia were found in his automobile on the single day when it was searched).

The offense also requires more than the private use of a dwelling by the owner or occupant for the personal use of illegal drugs. *Tucker v. State,* 19 Md.App. 39, 44, 308 A.2d 696 (1973). In *Tucker,* we affirmed the common nuisance conviction of one co-defendant who rented a motel room for the other co-defendant, an individual he knew to be a heroin addict. *Id.* at 43–44, 308 A.2d 696. We reversed the second co-defendant's conviction, however, because we concluded that "a drug addict who uses premises which he himself occupies as a residence, to store and conceal drugs for his own exclusive use, and does not use those premises to store or conceal drugs used or to be used by others, is not guilty of maintaining a common nuisance." *Id.* at 48, 308 A.2d 696.

Appellant asserts that the evidence adduced at trial was not legally sufficient to demonstrate that her residence was used for prohibited drug activities on a recurring basis. The evidence offered by the State to support a conviction consisted of the items recovered from the search and the testimonies of Trooper Grimes and Sergeant Burton regarding typical use of such items. In essence, the Task Force members' key testimony in establishing common nuisance was confined to their opinion that the amount of marijuana recov-

---

8. In *Nutt,* the articles seized from the defendant's apartment included: a bag containing fifteen tinfoil packets of codeine hydrochloride, a manila envelope containing heroin, ten glassine bags and five empty pink capsules of a type used to package and distribute cocaine or heroin, two burnt bottle top caps with residue, three hypodermic syringes and other devices used to inject heroin, 45 glassine bags containing heroin, seven tinfoil packets of cocaine. 16 Md.App. at 704, 299 A.2d 468.

ered suggested an intent to distribute[9] and the bong recovered was the type of device typically used by more than one person. Trooper Grimes and Sergeant Burton, however, did not, and could not, testify concerning their own, or any other Task Force member's, observations of appellant's residence actually being used for drug-related activities or transactions. Thus, no physical or observational evidence, other than the marijuana and related paraphernalia, suggested that the alleged offenses occurring in Davis's residence were of a continuing nature. The issue presented, therefore, is whether the expert testimony offered by Trooper Grimes and Sergeant Burton supplied the requisite additional evidence necessary to support appellant's conviction for maintaining a common nuisance. This is a close question; however, in our opinion, it did not. The expert opinions provided by Trooper Grimes and Sergeant Burton were based solely on the circumstantial physical evidence seized from Davis's residence on 7 May 1992. This alone does not necessarily require us to reverse the jury's verdict, because a conviction may rest on circumstantial evidence alone. *Wilson,* 319 Md. at 536, 573 A.2d 831.

We have stated that "circumstantial evidence is to be analyzed not as a 'chain,' no stronger than its weakest link, but rather as a 'cable,' the strength of which does not depend upon a single strand." *Eiland v. State,* 92 Md.App. 56, 68, 607 A.2d 42 (1992), *rev'd on other grounds,* 330 Md. 261, 623 A.2d 648 (1993), *quoting, Wilson,* 319 Md. at 536, 573 A.2d 831; *see also Hebron v. State,* 92 Md.App. 508, 515, 608 A.2d 1291 (1992), *aff'd,* 331 Md. 219, 627 A.2d 1029 (1993). Thus, where physical circumstantial evidence and witness observation or other independent circumstantial evidence "point in the same direction, reinforcing and corroborating each other," a determination of guilt "is no longer dependent upon a single strand of circumstantial evidence but rather upon a cable made up of multiple strands." *Eiland,* 92 Md.App. at 70, 607 A.2d 42. In contrast, if "the State's proof of guilt depends exclusively upon a

---

9. Interestingly, the jury acquitted Davis of possession of a controlled substance with an intent to distribute.

single strand of circumstantial evidence," then "a finding of guilt based upon a process of elimination must effectively eliminate the other reasonable possibilities." *Id.; see also Pressley v. State,* 295 Md. 143, 150, 454 A.2d 347 (1983) (recovery of defendant's fingerprints from burglarized office constituted "but one strand" of circumstantial evidence insufficient, in and of itself, to link the defendant to the crime). In such instances, to ensure that the jury relied on the appropriate degree of certainty in arriving at its conclusion, "a conviction based upon circumstantial evidence *alone* is not to be sustained unless the circumstances, taken together, are inconsistent with any reasonable hypothesis of innocence." *Wilson,* 319 Md. at 536–37, 573 A.2d 831.

A recent opinion by the Court of Appeals may be susceptible to being read as opining, in *dicta,* that, under certain circumstances, expert police testimony relying on recovered circumstantial evidence may suffice to establish an intent to distribute within the ambit of the common nuisance offense. In *1986 Mercedes v. State,* 334 Md. 264, 638 A.2d 1164 (1994), the Court was presented with the issue of deciding when the State is entitled to the benefit of the presumption that a motor vehicle, which is the subject of forfeiture proceedings, an *in rem* civil action, is forfeitable as proceeds of drug activity, including keeping a common nuisance. *1986 Mercedes,* 334 Md. at 281, 638 A.2d 1164. The State, in order to confirm the existence of drug activity, was required to prove that the owner of the vehicle had committed one or more of several enumerated controlled dangerous substances offenses, one of which included keeping or maintaining his residence as a common nuisance. *Id.* at 279, 638 A.2d 1164. The State's police expert relied on various items recovered from the car owner's apartment to establish either the intent to distribute or the existence of a common nuisance, including: a marijuana cigarette laced with PCP, 0.4 grams of PCP, an Acculab electronic scale, various measuring spoons, a white box containing a single-edged razor blade and cocaine residue, and three "ziploc" plastic bags. *Id.* at 269, 638 A.2d 1164.

The Court of Appeals, in what appears to us to be dicta, concluded that the aforementioned circumstantial physical evidence, combined with a police expert's opinion that possession of the recovered controlled paraphernalia indicate that the car owner had distributed cocaine from the apartment, was sufficient to establish the recurring nature of a common nuisance offense at the apartment. *1986 Mercedes,* 334 Md. at 279, 638 A.2d 1164. In reaching this conclusion, the *1986 Mercedes* Court did not address specifically the requirement we imposed in *Tucker* that the premises constituting the common nuisance be used "to store or conceal drugs used or to be used by others." *Tucker,* 19 Md.App. at 48, 308 A.2d 696. Because the Court based its observation on the "distribution" aspect of the common nuisance offense, which implicitly involves individuals other than the owner of the dwelling, it was not required to consider the requirement we recognized in *Tucker.*

Moreover, the controlling statute in *1986 Mercedes* permitted a rebuttable presumption in favor of forfeiture if the State could prove by "clear and convincing evidence" any one of the offenses contained in Article 27 § 286 of the Maryland Code. *See* Md.Code (1957, 1992 Repl.Vol.), Art. 27 § 297(*l*). Thus, the Court could have concluded that the State was entitled to the presumption based on evidence establishing either possession with an intent to distribute or common nuisance, or both. The Court, however, did not state definitively which offense it relied upon to conclude that the presumption should have arisen. *See 1986 Mercedes,* 334 Md. at 281, 638 A.2d 1164.

We are unwilling to assume that the Court of Appeals, in its consideration of a civil case involving a lesser evidentiary burden,[10] intended to alter significantly the well-developed

---

10. In *1986 Mercedes,* the Court noted that the evidentiary burden on the State in a forfeiture proceeding is a "clear and convincing evidence" standard. *1986 Mercedes,* 334 Md. at 282, 638 A.2d 1164. That standard of proof, according to the Court, required " 'a degree of belief greater than the usually imposed burden of proof by a fair preponderance of the evidence, but less than the burden of proof beyond a reasonable doubt imposed in criminal cases.' " *Id.* at 283, 638 A.2d 1164, *quoting, Berkey v. Delia,* 287 Md. 302, 318, 413 A.2d 170 (1980).

body of criminal caselaw, including its own recent opinion in *McMillian,* that defines what type of evidence is required to prove the recurring element of the common nuisance offense. Indeed, the *1986 Mercedes* Court relied on the "single day" principle espoused in *McMillian* to reach its conclusion. *See 1986 Mercedes,* 334 Md. at 281, 638 A.2d 1164. Yet, in *McMillian,* the police actually observed several drug transactions and the defendant actually admitted to his involvement in the drug activity. *McMillian,* 325 Md. at 296, 600 A.2d 430. In contrast, the basis of the opinion testimony of the expert witness in *1986 Mercedes* was limited to the physical items recovered from the search of the residence.

Thus, the net effect of the dicta in *1986 Mercedes* on the evidentiary requirements necessary for a common nuisance conviction remains unclear. Based on the holding in *McMillian,* however, and without further direction from the Court of Appeals, we decline to read *1986 Mercedes* as easing the previously well-established evidentiary requirements necessary to demonstrate common nuisance.

Whatever the significance of the differences between *1986 Mercedes* and *McMillian* may be, the physical evidence, testimony, and factual circumstances presented in *1986 Mercedes* are distinguishable from those presented in the case *sub judice.* Unlike the State's case against Davis, the evidence in *1986 Mercedes* focused solely on proof of distribution or the defendant's intent to distribute. In addition, the electronic scale, measuring spoons, razor blade, and plastic bags, on their own, constituted strong indicia of tools used by a drug dealer, not merely a drug user.

In contrast, the jury in Davis's case concluded that the evidence presented by the State was insufficient to demonstrate an intent to distribute by Davis. Still, the jury convicted her of maintaining a common nuisance, presumably based on the manufacturing and continuous use aspects of the offense. Without the benefit of police expert testimony, however, the items recovered from Davis's residence suggested a

reasonable hypothesis of individual recreational drug use.[11] Therefore, unlike the situation presented in *1986 Mercedes,* the police experts who testified at appellant's trial were required to establish that individuals, other than Davis or the other occupants of the house, used the recovered marijuana or that Davis manufactured the marijuana for use by others. In sum, based on the greater burden of proof required of the prosecution in the instant case, we hold that Trooper Grimes and Sergeant Burton relied on evidence that was factually distinct and not nearly as convincing as that relied upon by the police expert in *1986 Mercedes.*

The evidence presented by the State to prove common nuisance in the instant case is analogous to that presented and rejected by us as insufficient in *Nutt.* In the case *sub judice,* as in *Nutt,* the police only testified about the drugs and related paraphernalia recovered from appellant's home. Their testimony was limited to the uses of the drug and paraphernalia and the drug's chemical properties. In *Nutt,* we held that such evidence did not establish that the defendant's residence "had been utilized in offenses of a continuing or recurring character." *Nutt,* 16 Md.App. at 708, 299 A.2d 468.

Both Trooper Grimes and Sergeant Burton testified that, in their opinions, the totality of physical evidence recovered from Davis's residence suggested that the home had been used for marijuana parties. Their testimony established how the recovered marijuana, rolling papers, roaches, and the bong could be used, but not how those items actually had been used on a recurring basis at appellant's residence or why it was more likely that they were used there by others on a recurring basis than that they were for use by appellant.

The State failed to present any independent corroborating evidence to prove the recurring nature of the offense allegedly committed by appellant. Due to the officers' complete reliance on the physical evidence to establish their opinions, no

---

11. The specific physical evidence that formed the bases of the experts' opinions in appellant's case were not precise measuring instruments or containers customarily used in drug distribution.

additional strands of circumstantial evidence were created to support the metaphorical "cable" cited by the Court of Appeals in *Wilson.* In this way, the officers' testimony concerning potential use was insufficient to sustain appellant's conviction for maintaining a common nuisance.

The circumstantial evidence recovered from Davis's home and the testimony provided concerning it, therefore, did not eliminate the reasonable possibility that appellant kept the marijuana and paraphernalia strictly for personal use. Likewise, physical evidence presented at trial in no way precluded a conclusion that, if kept for use by others, the drugs and paraphernalia were to be used there on only one occasion. Therefore, we reverse the common nuisance conviction based on insufficient evidence.

### III.

The remand of this case to the trial court for the reasons stated in Part I, *supra,* will be a limited one pursuant to Md. Rule 8–604(d) since the sole issue to be determined is whether the evidence seized in the course of the search of Davis's home should have been suppressed. That issue will be resolved by the trial court upon the evidence to be offered at a hearing to be conducted on Davis's motion to suppress. *See McMillian v. State,* 325 Md. 272, 296–97, 600 A.2d 430 (1992), and cases cited there.

If the trial court concludes that Davis's motion to suppress should be granted, the judgments as to her convictions for simple possession of marijuana and possession of paraphernalia should be vacated, and a new trial may be conducted. On the other hand, if the trial court decides that the motion should be denied, those judgments will stand and she may appeal that determination, without prejudice to any of the unaddressed issues raised in the instant appeal.

JUDGMENT AS TO COMMON NUISANCE CONVICTION REVERSED; CASE OTHERWISE REMANDED TO THE CIRCUIT COURT FOR CARROLL COUNTY, WITHOUT AFFIRMANCE OR REVERSAL, FOR THE PUR-

POSE OF CONSIDERATION OF THE MOTION BY AP-
PELLANT TO SUPPRESS EVIDENCE; THE JUDG-
MENTS OF THE CIRCUIT COURT AS TO THE CONVIC-
TIONS FOR POSSESSION OF MARIJUANA AND POS-
SESSION OF PARAPHERNALIA REMAIN IN EFFECT
UNLESS VACATED BY THE CIRCUIT COURT IN AC-
CORDANCE WITH THE PROCEDURES SET FORTH IN
THE FOREGOING OPINION; COSTS IN THE CIRCUIT
COURT AND THE COURT OF SPECIAL APPEALS TO
ABIDE THE RESULT.