CORA J. GAVER, Guardian of Grace M. Main, et al.,
*vs.* GRACE E. GAVER, HARMON L. GAVER
and GEORGE W. GAVER, Administrators
of Joseph W. Gaver, Deceased, et al.

*Mistake*: *reformation of contracts; jurisdiction of equity; mistake must have been mutual.*

Where the proof can leave no doubt in the mind of the Court that a mistake has intervened and that the instrument sought to be rectified is variant from the actual contract intended by the parties, equity may amend the instrument so as to make it conform to the parties' real intent.                    p. 639

But it is not sufficient to show the intention of only one of the parties to the contract; proof must establish incontrovertibly that the error or mistake was common to both parties.    p. 639

A guardian had loaned the ward's money to J. W. G., and had taken as security his bond running to the State with other sureties; in the bond J. W. G. was inaccurately described as the *custodian* of the money, and the bond was on the condition that J. W. G., *custodian and holder* of the funds, should faithfully account to the Orphans' Court, etc.; the bond was afterwards declared void as not being required by law, and which should have been made to the State, and because of its not having been accepted. Upon a bill filed by the guardian to have the instrument reformed, so as to make it run to the guardian, it was *held,* that the burden of proof was upon the guardian by incontrovertible evidence to show that it had been the intention of the obligors that the bond was to have been made payable to the guardian, and, failing in such proof, it was *held,* that equity could not reform the instrument.                    p. 644

*Filed February 13th, 1913.*

Appeal from the Circuit Court for Frederick County, in Equity (URNER, C. J., PETER and MOTTER, JJ.).

The facts are stated in the opinion of the Court.

. The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Leo Weinberg.* (with whom was *Frank L. Stoner,* on the brief), for the appellant.

*Glenn H. Worthington* (with whom was *Reno S. Harp,* on the brief), for the appellees.

PATTISON, J., delivered the opinion of the Court.

The bill in this case was filed by the appellant to reform a bond executed by one Joseph W. Gaver as principal and the appellees, Harmon L. Gaver and Frederick W. Obenderfer as sureties. The bond which is sought to be reformed is as follows:

"*Know All Men By These Presents,* That we, Joseph W. Gaver, Harmon L. Gaver and Frederick W. Obenderfer, of Frederick County, are held and firmly bound unto the State of Maryland in the sum of Five Thousand ($5,000.00) dollars, current money, to be paid to the State aforesaid or its certain attorney, to which payment, well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents.

"Sealed with our seals, and dated this 23rd day of March, in the year of our Lord one thousand nine hundred and five.

"The condition of the above obligation is such, that if the above bounden Joseph W. Gaver, as custodian and holder of the sum of twenty-five hundred dollars for Cora J. Gaver, guardian to Grace M. Main, Oscar C. Main, Nannie N. Main, Roy E. G. Main and Melvin J. Main, heirs and representatives of Jonathan

C. Main, late of Frederick County, deceased, shall faithfully account with the Orphans' Court of Frederick County, Maryland, as directed by law, for the management of the property and estate of the infants under her care, and also shall deliver up said property, agreeably to the order of the said Court, or the directions of law, and shall in all respects perform the duty of custodian and holder of the funds of said guardian to the said Grace M. Main, Oscar C. Main, Nannie N. Main, Roy E. G. Main, and Melvin J. Main, infants as aforesaid, according to law, then the above obligation shall cease—it shall otherwise remain in full force and virtue.

　　　　　　　　　JOSEPH W. GAVER.　　　　(Seal)
　　　　　　　　　HARMAN L. GAVER.　　　　(Seal)
　　　　　　　　　FREDERICK W. OBENDERFER　(Seal)
"Signed, sealed and delivered in the presence of
　　　　　　　　　　　　C. H. ECKSTEIN."

The prayer of the bill asks that the bond be reformed by the insertion of the words *"Cora J. Gaver, Guardian,"* instead of *"The State of Maryland"* after the words "bound unto," and the words *"the said Cora J. Gaver, guardian"* instead of the words *"the State aforesaid, or its certain attorney,"* after the words "to be paid to," so that the bond shall read as if originally written:

"Know All Men By These Presents, that we, Joseph W. Gaver, Harmon L. Gaver and Frederick W. Obenderfer, of Frederick county, Maryland, are held and firmly bound unto *Cora J. Gaver, Guardian,* in the sum of five thousand dollars ($5,000.00), current money, to be paid to the said *Cora J. Gaver, Guardian,"* etc.

This bond was before this Court in the case of *State* v. *Gaver,* 115 Md. 250, in which case the said Harmon L. Gaver and Frederick W. Obenderfer, appellees, were sued upon said bond, Cora J. Gaver being the equitable plaintiff. In that case this Court affirmed the ruling of the lower Court in sustaining the demurrer to the declaration.

This Court in speaking of the bond said: "It was not given for the protection of the State or in accordance with any law requiring it to be executed for the benefit of the equitable plaintiff. No one was authorized to receive and accept it on behalf of the State, the obligee, and as it could not become operative without delivery and acceptance, it is not the bond of the appellees to the State."

In the case of *State* v. *Gaver, supra,* the equitable plaintiff in her declaration alleged that she was appointed guardian for the infants named in the aforegoing bond on January 21, 1903, and that she on the 23rd day of March transferred to Joseph W. Gaver, in his lifetime, as custodian and holder for her, the sum of twenty-five hundred dollars, and thereupon on the same day, to wit: On March 23rd, 1905, the said Joseph W. Gaver, as principal, and Harmon L. Gaver and Frederick W. Obenderfer, as sureties, executed under their hands and seals a certain bond or writing obligatory," which was fully set out in the declaration and is the bond that appears herein.

This Court in further discussing that case, said: "It appears, however, from the *allegations of the narr.* and from the terms of the bond that Joseph W. Gaver received from the equitable plaintiff the sum of twenty-five hundred dollars which belonged to her as guardian of Grace L. Main and others, and that the bond was given to secure the payment of said sum to the guardian. Under such circumstances the bond should have been made payable to the guardian, and was no doubt intended to be so made, as it was evidently given to secure to her a sum for which she was bound to account. If it was the intention of the obligors and the guardian to have the bond made payable to her and through the mistake of the draughtsman it was given to the State as obligee, and it was delivered to the guardian or to some one for her and she accepted it, believing that it was payable to her, there is no reason why, upon a proper bill filed, a Court of Equity could not correct the mistake, reform the

bond so as to make it conform to the intention of the parties and enforce it against the obligors."

It was after this decision had been handed down that the plaintiff filed her bill in this case asking for a reformation of the bond.

In her bill the plaintiff alleges, among other things, that when the bond was presented to her she was told by Joseph W. Gaver, who was then and had been for sometime her attorney, that it was payable to her and that the sureties thereon "were men of sufficient property and estate to meet the obligations of said bond in the event of any default in the payment of the sum of money to be secured thereby," and that, reposing faith in such representations of the said Joseph W. Gaver, she then and there parted with and transferred said sum of twenty-five hundred dollars ($2,500.00) to the said Joseph W. Gaver" without reading the bond. The bill further alleges that the said Joseph W. Gaver was authorized to, and did act for the appellees in all matters touching said bond and that it was the intention of herself and defendants that the said bond should be made payable to her, and though the mistake design of the said Joseph W. Gaver the said bond was made payable to the State of Maryland instead of to her as guardian. She further alleges, however, that she never saw or conversed with either of the appellees relative to the subject-matter of the bond.

The defendants in their answer deny that Joseph W. Gaver acted for them in relation to said bond, and they also deny that they were in anywise responsible for the representations made to the plaintiff by him, alleging that they had never authorized him to make any representations on their behalf respecting the bond or in respect to any other matter; and in their answer they further deny that the plaintiff delivered to him the twenty-five hundred dollars because of such alleged representations. They further allege in their answer that the bond was payable to the State of Maryland as it was intended by them, for "as they understood, the bond was intended to guarantee the faithful per-

formance of a duty undertaken by Joseph W. Gaver, which duty was to be supervised and controlled by the Orphans' Court, as the conditions of the bond and the representations of Mr. Gaver led them to believe, and that under no circumstances would they have become sureties for Joseph W. Gaver upon a straight obligation to pay twenty-five hundred or five thousand dollars to Mrs. Cora J. Gaver Main (Gaver), "and, as they allege, the bond is the very bond they signed and they did not intend it to be payable to any obligee other than the State of Maryland, and they certainly did not intend it should be payable to Mrs. Cora J. Gaver Main (Gaver), guardian."

The principle upon which Courts of equity interpose to afford relief in cases of this character is now well established in this and other States. "Where the proof is of such character as to leave no doubt whatever in the mind of the Court that mistake has intervened and the instrument sought to be rectified is variant from the actual contract of the parties, there can be no doubt at this day of the competency of a Court of equity to so amend the instrument as to make it conform to the real intention of the parties. But in such cases it is not enough to show the intention of one of the parties to the instrument only; the proof must establish incontrovertibly that the error or mistake was common to both parties. In other words, it must be conclusively established that both parties understood the contract as it is alleged it ought to have been expressed." *Stiles* v. *Willis,* 66 Md. 555; *Cohen* v. *Numsen,* 104 Md. 679; *Dulaney* v. *Rogers,* 50 Md. 524; *Farmville* v. *Butler,* 55 Md. 233.

Applying these tests, the evidence in the record before us fails, in our opinion, to make out a proper case for the reformation asked for by the bill.

The facts of this case are substantially as follows: The plaintiff, as guardian for her infant children, received on the 21st of January, 1903, from the proceeds of the sale of the lands of one Jonathan C. Main, the grandfather of said infants, the sum of $1,668.59, and on March 23rd, 1903, she

received from the administrators of Jonathan C. Main the further sum of $744.85. The money received by her on the 21st of January was upon that date paid over unto Joseph W. Gaver, who was surety upon her guardian bond, for which he gave to her his promissory note, as of that date, for said amount, payable in six months thereafter, with interest at the rate of four per cent. per annum. The sum received by her on March 23rd was on that day likewise paid over to the said Joseph W. Gaver, for which he gave her his promissory note as of that date for said amount, or at least within a few dollars of that amount, payable twelve months after date, with interest at the rate of four per cent. per annum.

The record discloses by endoresments upon said notes, that the interest thereon was paid to the plaintiff by said Gaver to March 23rd, 1905, at which time the said two notes, amounting in the aggregate to nearly $2,500, were surrendered by the plaintiff to Gaver and he, in turn, gave to her his promissory note dated as of March 23rd, 1905, for the sum of $2,500, payable in six months thereafter, with interest at the rate of 5½%. Below the body of the note and over the signature of Gaver is the following memorandum: "This note is secured by a bond for $5,000, of this date and filed in the office of the Register of Wills for Frederick County, Md., and is not to be negotiated or hypothecated by the holder." Upon said last named date, March 23rd, the bond mentioned in these proceedings was executed and thereafter left by Gaver, but not filed, in the office of the Register of Wills for Frederick County, where it remained until after the death of Gaver in 1909.

The interest was paid upon this note until March 23rd, 1906, as shown by endorsement thereon, at or about which time Grace M. Main, one of said infant children, reached the age of eighteen years, and to her was paid by Joseph W. Gaver the sum of $482.68, being the amount to which she was entitled out of the fund in the hands of her mother as guardian. Upon and after this payment by Gaver to Grace, the note for $2,500 was surrendered to him by the plaintiff

and a new note was given to her by him, dated as of the 17th of April, 1906, for the sum of $1,930.76, payable in six months thereafter, with interest at the rate of 5½% per annum. This note also contained a memorandum to the effect that it was secured by a bond for five thousand dollars dated as of March 23rd, 1905, filed in the office of the Register of Wills, etc. The interest upon this note seems to have been regularly paid by Joseph W. Gaver to October 17th, 1908, some months before his death.

This note for $1,930.76, although in the possession of the plaintiff at the time of the death of Gaver, was never filed against his estate, either in the Orphans' Court or in the equity proceedings instituted for the sale of his lands, nor was its existence disclosed until it was asked for by the counsel for the appellees and produced by the plaintiff while she was upon the witness stand in the progress of these proceedings, but the plaintiff filed in said equity proceedings an open account, evidently based upon said note, against Joseph W. Gaver for an amount said to be due by him to her as guardian, with interest at the rate of 5½% from October 17th, 1908, the date to which interest was paid on said note, but no reference whatever was made to the note. The said sum with interest computed to March 8th, 1910, amounted to $2,078.26. Upon this account filed there was paid to the plaintiff the sum of $266.07.

It is only to recover from the appellees upon the bond when reformed, the indebtedness owing from Joseph W. Gaver to the appellant, that the attempt is here made to reform the bond, for in no other sense was Joseph W. Gaver, at the time of his death, the holder or custodian of any part of the funds that were paid to the appellant as guardian of said infants. Therefore, we should consider the question here to be determined in the light of such purpose or object.

It is disclosed by the facts stated that two years prior to the execution of the bond in this case the entire fund in the hands of the plaintiff as guardian had been paid over

to Joseph W. Gaver, and that from such time the relation of debtor and creditor existed between them. As disclosed by the evidence, the plaintiff became concerned and uneasy as to the safety of the investment in the unsecured notes of Gaver and demanded of him that he should further secure the indebtedness. It was in response to this demand that the bond was executed, and there can be no doubt that in the mind of the plaintiff such was the purpose of the bond. But was it so understood by the appellees? There is no evidence tending to show that the defendants had any knowledge whatever of the existence of the indebtedness from Gaver to the plaintiff as guardian, nor is there anything in the bond to indicate that at such time he was the debtor of the plaintiff in the sense that he had borrowed from her the entire fund and as evidence of said indebtedness had given to her his promissory notes therefor. He is described in the bond merely as the holder and custodian of the fund, and it was in this capacity that he was known to the appellees, and as they contend, supported by their testimony, they understood the effect of their suretyship to be that they were merely guaranteeing his fidelity in the administration of the fund so held by him as custodian, and thus they regarded him as under the suppervision and direction of the Orphans' Court, for which reason they concluded the bond was properly made payable to the State of Maryland.

The fact that Gaver was a debtor to the plaintiff as guardian to the extent of the entire amount of funds in her hands as guardiaan not being known to the appellees, it was not considered by them in the execution of the bond, and it cannot be said that their purpose in signing the bond was to further secure the payment of the indebtedness of Gaver unknown to them at the time. Both in their sworn answer and in their testimony they say that under no circumstances would they have become surety for Joseph W. Gaver upon a straight obligation to pay twenty-five hundred or five thousand dollars to Mrs. Cora J. Gaver, and that they did not intend it to be payable to any obligee other than the State of Maryland.

Their unwillingness to sign a bond making themselves liable for a long standing debt of their principal, incurred for money borrowed and used by him, although willing and ready to become sureties for his fidelity in the administration of the fund in his hands as custodian and holder, subject, as they understood it, to the supervision and direction of the Orphans' Court, is based upon a reasonable distinction as to the amount of risk assumed. For as was said by the Court below in its opinion: "There is a manifest and material difference between the suretyship for the payment of a debt and one for the faithful administration of a fund in hand. The former liability is concerned with the financial responsibility of the principal, while the latter looks simply to his honesty."

The effect intended to be given to the bond by the appellees was one not recognized by law, but this fact cannot have the effect of varying the intention of the appellees as to the purpose of the bond, and it can in no wise support the contention of the plaintiff that the effect intended to be given to the bond by the appellees was that contended for by her.

Gaver, as admitted by the palintiff, was her attorney, but there is no proof that he was authorized to act for the appellees in any agreement or contract to be made with her. The extent of their liability is to be found only in the provision of the bond executed by them. The purpose and effect of the bond as intended by the plaintiff was, no doubt, to secure the payment of the indebtedness owing by Gaver to her, but there is no evidence to support the contention that the appellees intended that such was to be the purpose and effect of the bond.

But the plaintiff relies upon what was said by this Court in the former case of *State* v. *Gaver, Supra,* as to the reformation of the bond, which we have above quoted, it being the contention of the plaintiff that by the language there used the Court held that the existence of a mutual mistake was apparent upon the face of the bond. The suggestion or expression of the Court in the former case referred

to was in large part based upon the allegations of the *narr.*, which materially differ from the facts of the case as disclosed by these proceedings, and the Court, speaking through JUDGE THOMAS, was careful to say: "*If* it was the intention of the obligors and the guardian to have the bond made payable to her, and through the mistake of the draughtsman it was given to the State as obligee, there is no reason why, upon a proper bill filed, a Court of Equity could not correct the mistake, reform the bond so as to *make it conform to the intention of the parties,* and enforce it against the obligors." As the facts, however, are developed in this case it is not shown that it was the intention of the obligors that the bond should be made payable to her, and the burden of proving this fact by incontrovertible evidence was upon the plaintiff, and in this she has utterly failed.

This is, indeed, a very unfortunate case in as much as it appears the money of the infants will be lost to them, but we cannot relieve them of their loss, resulting from the misplaced confidence of their mother, by placing upon the appellees a burden differing from that which they had agreed to assume and one which they are not legally required to assume.

We deem it unnecessary to pass upon the numerous exceptions to the testimony filed by the respective parties, in as much as our decision would not be affected by the elimination of any testimony which, in our opinion, can be regarded as objectionable.

From what we have said, we will affirm the decree of the Court below.

*Decree affirmed, with costs to the appellees.*