689 A.2d 106

**Marie BOYD, et al.**

**v.**

**Thomas E. HICKMAN, et al.**

**No. 663, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Feb. 21, 1997.

Charles Mentzer (Judith Stainbrook on the brief), Westminster, MD, for appellants.

Betty S. Sconion, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General on brief for appellees, Hickman, Walker and Heuisler) Pikesville, MD, Niccolo N. Donzella (Shapiro and Olander on the brief for appellee, McKendrick), Baltimore, MD, for appellees.

Argued before HOLLANDER, EYLER and THIEME, JJ.

HOLLANDER, Judge.

On May 29, 1992, while Diane Wisner was driving her mother, Marie Boyd, home from the grocery store, Ms. Wisner was arrested by members of the Carroll County Narcotics Task Force (the "Task Force") for possession of cocaine with intent to distribute. Incident to Ms. Wisner's arrest, and pursuant to Maryland Code (1957, 1996 Repl.Vol.) Article 27, § 297 ("the Maryland drug forfeiture law" or "the statute"), the Task Force seized the vehicle Ms. Wisner had been driving, which was owned by Ms. Boyd and her husband, Paul Boyd, appellants. Later, Ms. Boyd agreed to pay $2,000 for the return of her car, pursuant to the Task Force's "buy back" program. In exchange for the payment, the Task Force agreed not to recommend the car for forfeiture, and the State's Attorney's office agreed not to file a petition for forfeiture.

Subsequently, appellants brought suit against Thomas E. Hickman, State's Attorney for Carroll County, Barton F. Walker, III, Senior Assistant State's Attorney for Carroll County, and two of the arresting officers on the Task Force, Sergeant Andrew McKendrick and Trooper First Class ("TFC") Robert Heuisler, appellees. Appellants asserted claims for fraud, conspiracy, and violations of Articles 6, 9, 19, and 24 of the Maryland Declaration of Rights. Appellees filed motions to dismiss and, in the alternative, motions for summary judgment. After the Circuit Court for Carroll County granted the defendants' motions to dismiss, appellants timely noted their appeal. They present the following questions for our review:

I. Are the Defendants entitled to a qualified immunity defense for their violations of Maryland Constitutional Law?

II. Were plaintiffs' allegations of malice sufficient to withstand a Motion to Dismiss under both the constitutional and nonconstitutional tort claims?

III. Were plaintiffs' allegations of intentional misrepresentation sufficient to withstand a Motion to Dismiss under both the Constitutional and nonconstitutional tort claims?

IV. Is the Maryland forfeiture law unconstitutional as written and as applied?

We conclude that the Maryland forfeiture law is neither unconstitutional as written nor unconstitutional as applied. Moreover, we conclude that the court below properly granted appellees' motions for summary judgment as to all counts, although the court designated the motions as motions to dismiss. Accordingly, we decline to reach the remaining questions.

### Factual Background

During May 1992, Ms. Wisner was under surveillance by the Task Force,[1] which was acting on a tip from a confidential informant that Ms. Wisner was distributing cocaine from several automobiles, including a 1985 Ford Tempo. On May 29, 1992, after corroborating the tip through direct observation, Task Force members Sergeant McKendrick and TFC Heuisler, along with other Task Force members, stopped Ms. Wisner in Westminster as she was driving her mother home from the grocery store in her mother's 1985 Ford Tempo. The officers searched Ms. Wisner and in her purse found cocaine, as well as drug paraphernalia, $2031 in cash and checks, and tally sheets. They arrested Ms. Wisner and seized the automobile. Ms. Wisner was charged with posses-

---

1. The Task Force included sworn officers from the City of Westminster Police Department and the Maryland State Police.

sion of a controlled dangerous substance with intent to distribute, and was subsequently convicted of that offense.

Immediately after the arrest of her daughter and the seizure of her car, Ms. Boyd was driven by TFC Heuisler to the Maryland State Police Barrick in Westminster. She told the officer that she owned the Ford Tempo and had allowed her daughter to use it for the prior four to six weeks. Ms. Boyd alleged in her complaint that when she asked TFC Heuisler when her car would be returned, he responded that she would "never" get her car back. Another Maryland State Police Trooper then drove Ms. Boyd home with her groceries. Ms. Boyd contended in her complaint that, after arriving at her house, she took two small bags of groceries into the house and returned to the curb to find that the Trooper had thrown her remaining groceries onto the lawn and driven away.

On May 30, 1992, after she had been released on bond, Ms. Wisner called Sgt. McKendrick regarding her mother's car. The Boyds' complaint alleges that Sgt. McKendrick told Ms. Wisner that it would cost $500 to get the car back, and that he would call her back at a later time. In Sgt. McKendrick's affidavit, submitted in support of his summary judgment motion, he stated that he had no recollection of this exchange. When Sgt. McKendrick did not call after several days, Ms. Boyd called the State's Attorney's Office and was referred to Mr. Walker, who handled forfeiture matters for the State's Attorney's office.[2] In a series of telephone conversations, Mr. Walker informed Ms. Boyd that the "blue book" value of the car was $2,500, but that she could "buy back" the car for $2,000. The complaint alleges that Mr. Walker instructed her to bring that amount in cash to the Westminster Police Station. In fact, Ms. Boyd brought a Treasurer's Check to the police station, payable to the Carroll County Narcotics Task Force. Sgt. McKendrick accepted this check, and required Ms. Boyd to sign a release before receiving her car. The release reads, in relevant part:

---

2. Appellees assert that the State's Attorney for Carroll County is the designated forfeiting authority for the Task Force.

I agree to pay the sum of TWO THOUSAND DOLLARS ($2,000.00) on this date, as a result of an agreement which was reached between myself, and Sgt. Andrew McKendrick of the Carroll County Narcotic [sic] Task Force and Bart Walker of the Carroll County States [sic] Attorney's Office, whereby, *I understand that the Carroll County Narcotic [sic] Task Force will not file a petition of forfeiture for this vehicle, as is provided for by Article 27, Section 297, of the Annotated Code of Maryland.*

This agreement is made freely and voluntarily without any threats, promises or coertion [sic] and with the understanding that it will have no bearing upon, or consideration in any currently pending or future criminal prosecution involving myself. I also acknowledge that *I have been afforded the opportunity to have this agreement reviewed by my attorney.*[3]

(Emphasis supplied). Mr. Boyd, a co-owner of the car, did not sign the release, although he was present.[4] The circuit court found that "the car was lawfully seized and recommended for forfeiture under the governing statute," but the parties do not contend that the car was recommended for forfeiture. Rather, the Boyds regained possession of their vehicle after Ms. Boyd made payment and signed the release. It is that event that is central to this dispute.

## Discussion

### I.

 Appellees filed motions to dismiss and, in the alterna-

---

3. Under the statute, forfeited property benefits the State or the political subdivision in which it was seized. Art. 27, § 297(f). The release signed by Ms. Boyd reads in part: "I, Marie Schuchart Boyd ... agree to pay the City of Westminster...." The Boyds asserted in their suit, however, that they were instructed to pay the Task Force. The record contains no evidence of the ultimate disposition of the money, but the Boyds have not contested the propriety of the payee.

4. Appellants do not assert that Ms. Boyd lacked authority to bind her husband.

tive, motions for summary judgment.[5] As a preliminary matter, we must determine which motion was actually granted. The trial court's memorandum opinion and the docket sheet refer to the disposition as a grant of the motions to dismiss, and appellants urge us to review the trial court's decision under the standard for such a motion. Appellees note, however, that the trial judge considered materials outside the pleadings, and therefore urge us to treat the order as the grant of a motion for summary judgment.

In analyzing a motion to dismiss, the trial court must decide whether the complaint states a claim, assuming the truth of all well-pleaded facts in the complaint and taking all inferences from those facts in the light most favorable to the plaintiff. *Sharrow v. State Farm Mut. Auto. Ins. Co.*, 306 Md. 754, 762, 768, 511 A.2d 492 (1986) (citing *Tadjer v. Montgomery Co.*, 300 Md. 539, 542, 479 A.2d 1321 (1984)). "Dismissal is proper only if the facts and allegations . . . would . . . fail to afford plaintiff relief if proven." *Faya v. Almaraz*, 329 Md. 435, 443, 620 A.2d 327 (1993) (collecting cases); *see also Davis v. DiPino*, 337 Md. 642, 655 A.2d 401 (1995). In deciding a motion for summary judgment, the court must decide whether there is any genuine dispute as to material facts and, if not, whether either party is entitled to judgment as a matter of law. *Davis*, 337 Md. 642, 655 A.2d 401; *Beatty v. Trailmaster Products, Inc.*, 330 Md. 726, 737–38, 625 A.2d 1005 (1993); *Bits "N" Bytes Computer Supplies, Inc. v. Chesapeake & Potomac Telephone Co. of Md.*, 97 Md.App. 557, 576–77, 631 A.2d 485 (1993); *Seaboard Surety Co. v. Richard F. Kline, Inc.*, 91 Md.App. 236, 242–45, 603 A.2d 1357 (1992).

Here, defendants supplemented their motions with affidavits and other materials, including Ms. Wisner's criminal record. When the circuit court considers matters outside the pleadings, the court treats the matter as a motion for summary

---

5. Mr. Hickman, Mr. Walker and TFC Heuisler filed a joint motion. Sgt. McKendrick, who was named as a defendant only in counts three and four of the complaint, alleging civil conspiracy and deprivation of a property right, respectively, filed a separate motion.

judgment, and the legal effect of the ruling in favor of the moving party is to grant a motion for summary judgment, notwithstanding the court's designation of the ruling as a motion to dismiss. Md. Rule 2–322(c); *see Fairfax Sav. v. Kris Jen Ltd. Partnership,* 338 Md. 1, 9, 655 A.2d 1265 (1995); *Hrehorovich v. Harbor Hosp. Ctr.,* 93 Md.App. 772, 614 A.2d 1021 (1992), *cert. denied,* 330 Md. 319, 624 A.2d 490 (1993).

Although the circuit court's memorandum opinion stated that it granted the defendants' "motion to dismiss," the circuit court clearly considered the affidavits and other materials submitted by the defendants. For example, the circuit court relied on Sgt. McKendrick's affidavit to conclude that Task Force members found enough drugs in Ms. Wisner's possession to indicate that a sale was contemplated. The circuit court also relied on the affidavit and other materials to conclude that the Task Force had corroborated evidence that Ms. Wisner sold drugs from and transported drugs in Ms. Boyd's car. Moreover, extrinsic evidence showed that Ms. Wisner was subsequently convicted of a felony drug offense arising from the May 29 arrest. Therefore, the circuit court's consideration of matters outside the pleadings rendered its decision a grant of a motion for summary judgment.

We review the grant of a motion for summary judgment to determine whether the trial court was legally correct. *Baltimore Gas & Electric Co. v. Lane,* 338 Md. 34, 656 A.2d 307 (1995); *Warner v. German,* 100 Md.App. 512, 642 A.2d 239 (1994); *Barnett v. Sara Lee Corp.,* 97 Md.App. 140, 627 A.2d 86, *cert. denied,* 332 Md. 702, 632 A.2d 1207 (1993). In our view, the court's decision was legally correct. We explain.

## II.

■ The Maryland drug forfeiture law "is, and was intended to be, a harsh law." *Prince George's County v. Vieira* 340 Md. 651, 658, 667 A.2d 898 (1995). The purpose of the statutory scheme is to impede the drug trade by depriving drug dealers of the instrumentalities that facilitate the sale and use of illegal drugs. *Aravanis v. Somerset County,* 339

Md. 644, 655, 664 A.2d 888 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 916, 133 L.Ed.2d 846 (1996).

■■■■ Section 297 is a civil *in rem* forfeiture statute. *Aravanis,* 339 Md. at 653, 664 A.2d 888; *1986 Mercedes Benz 560 CE v. State,* 334 Md. 264, 273, 638 A.2d 1164 (1994). The Supreme Court has recently re-affirmed the historical view that in a forfeiture proceeding,

[i]t is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient. In a criminal prosecution it is the wrongdoer in person who is proceeded against, convicted and punished. The forfeiture is no part of the punishment for the criminal offense.

*United States v. Ursery,* —— U.S. ——, —— – ——, 116 S.Ct. 2135, 2140–41, 135 L.Ed.2d 549 (1996) (quoting *Various Items of Personal Property v. United States,* 282 U.S. 577, 581, 51 S.Ct. 282, 284, 75 L.Ed. 558 (1931)) (emphasis in *Ursery* omitted). A civil forfeiture statute will not be considered punishment for Double Jeopardy purposes unless the legislative body intended it to be punitive, or its effect was so punitive as to negate its remedial purpose. *Id.* at —— – ——, 116 S.Ct. at 2147–48.[6] In *One 1984 Ford Truck v. Baltimore County,* 111 Md.App. 194, 681 A.2d 527 (1996), we concluded, based on the factors articulated in *Ursery,* that Art. 27, § 297 [7] "is not so punitive as to require criminal constitutional protections." *Id.* at 207, 681 A.2d 527. We reasoned that the

---

**6.** The Court in *Ursery* specifically distinguished *in rem* civil forfeitures from *in personam* civil penalties, discussed in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), tax proceedings under the Double Jeopardy Clause, discussed in *Department of Revenue of Mont. v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), and treatment of civil forfeitures under the Excessive Fines Clause, discussed in *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). *United States v. Ursery,* —— U.S. ——, —— – ——, 116 S.Ct. 2135, 2142–2146, 135 L.Ed.2d 549 (1996).

**7.** Hereinafter, unless otherwise indicated, all statutory references shall be to Art. 27, § 297.

Legislature intended § 297 to serve a remedial and deterrent purpose and that the statutory scheme was not unduly punitive in purpose or effect. *Id.*

■ The statute provides that vehicle seizure must be supported by "probable cause to believe that the property has been used or [is] intended to be used in violation of this subheading." § 297(d)(iv). Subsection 297(b) refers to the property subject to forfeiture and "covers the waterfront." *State v. One 1982 Plymouth,* 67 Md.App. 310, 314, 507 A.2d 633 (1986). It is "the only [provision] remotely concerned with the necessary conditions for *forfeiture." Id.* (Emphasis supplied). It provides, in relevant part, that "[a]ll conveyances including ... vehicles ... which are used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment" of controlled dangerous substances or paraphernalia, are subject to forfeiture. §§ 297(b)(1),(4). If the driver of the seized vehicle is not the registered owner, however, the determination of the ultimate forfeitability of the vehicle depends on whether the vehicle owner can establish an innocent owner defense, pursuant to § 297(c). *See State v. One 1985 Ford,* 72 Md.App. 144, 147, 527 A.2d 1311 (1987) (holding "once the illicit use of the vehicle is shown, the vehicle is presumptively subject to forfeiture and the burden of proof is upon the owner to demonstrate entitlement to an exemption from that presumptive forfeiture.").

The statute sets forth a three-step process for seizing, recommending forfeiture, and ultimately filing a complaint for forfeiture of a motor vehicle. First, when a seizure occurs without preliminary judicial process (such as a warrant), the arresting officer must make the decision to seize the automobile based on the factors enumerated in subsection (i). Second, the chief law enforcement officer reviews the seizure using the same factors, and also reviews Motor Vehicle Administration records to determine all registered owners and lienholders. The chief law enforcement officer then decides whether to recommend to the forfeiting authority the forfeiture of the vehicle. § 297(i)(3)(i). Third, upon a recommendation of forfeiture, the forfeiting authority conducts its own

independent review, § 297(j), and may then file a complaint for forfeiture in the circuit court. § 297(h)(2)(ii). The forfeiting authority must file a petition for forfeiture within 45 days of seizure. *Id.* If the forfeiting authority makes an independent determination that one of the innocent owner exceptions in subsection (i)(2) applies, or that the standards enumerated under subsection (i)(1) were not met, "the forfeiting authority shall surrender the vehicle upon request to the owner." § 297(j).

Appellants assert a number of challenges to § 297. Their contentions focus primarily on § 297(i) of the statute, which is specific to seizing a motor vehicle and recommending it for forfeiture, and is distinct from the general provisions for forfeiture under § 297(b). For convenience, we set forth in full the provisions of § 297(i): [8]

(i) *Motor vehicles—Standards for seizure.*—In exercising the authority to seize motor vehicles pursuant to this section the following standards shall be utilized:

(1) A motor vehicle used in violation of this section shall be seized and forfeiture recommended to the forfeiting authority when:

(i) Controlled dangerous substances in any quantity are sold or attempted to be sold in violation of this subtitle;

(ii) Although the violator has not sold or attempted to sell controlled dangerous substances in violation of this subtitle, an amount of such substances or paraphernalia is located which would reasonably indicate that sale is contemplated by the violator; or

(iii) The total circumstances of the case dictate that seizure and forfeiture is justified; these circumstances would include such factors as the following:

 1. The possession of controlled dangerous substances;

---

**8.** By enactment of Chap. 285, Acts 1989, effective July 1, 1989, the Legislature rewrote § 297. Former subsection (f) became subsection (i) and former subsection (a) became subsection (b). In addition, current subsections (c) and (s) were added to the statute.

2. An extensive criminal record of the violator;

3. A previous conviction of the violator for a controlled dangerous substances violation;

4. Corroborated information is developed indicating that the violator is or was recently a seller, or frequently associates with individuals known to be distributors of illegal controlled dangerous substances or paraphernalia;

5. Circumstances of the arrest; or

6. The manner in which the vehicle was being used.

(2) A motor vehicle used in violation of this subtitle shall not be seized and forfeiture shall not be recommended to the forfeiting authority when:

(i) The motor vehicle is being used by a member of the family other than the registered owner and controlled dangerous substances or paraphernalia are located therein in a quantity insufficient to suggest a sale is contemplated, and where no sale was made or attempted, and the registered owner did not know that such material was in the motor vehicle;

(ii) An innocent registered owner lends his motor vehicle to another and the latter or someone invited into the motor vehicle by such person causes controlled dangerous substances or paraphernalia to be brought into the vehicle without the knowledge of the owner[ [9] ]; or

(iii) The motor vehicle falls within the provisions of subsection (b)(4)(i) or (ii) of this section.

(3)(i) Forfeiture of the motor vehicle used in violation of this subtitle shall be recommended to the forfeiting authority

---

9. Section 297(i)(2)(i) provides for use by a family member and § 297(i)(2)(ii) provides for use by "another." The Boyds do not contend that § 297(i)(2)(ii) applies here. Moreover, because the Legislature provided both for use by a family member (§ 297(i)(2)(i)) and use by "another" (§ 297(i)(2)(ii)), basic principles of statutory construction preclude us from applying both subsections, which have differing requirements. *See DeJarnette v. Federal Kemper Ins. Co.,* 299 Md. 708, 718, 475 A.2d 454 (1984)(articulating the principles that a statute should be read to give meaning to all of its parts and that specific terms prevail over general terms).

only after the chief law enforcement officer of the police department, bureau, or force that seized the motor vehicle has determined from the records of the Motor Vehicle Administration the names and addresses of all registered owners and secured parties as defined in the Code, has personally reviewed the facts and circumstances of the seizure and has personally determined, according to the above guidelines, that forfeiture is warranted and so represents in writing to the appropriate forfeiting authority. (ii) In a proceeding under this section for forfeiture of a motor vehicle:

1. A sworn affidavit by the chief law enforcement officer that the chief followed the requirements of this paragraph is admissible in evidence; and

2. The chief law enforcement officer may not be subpoenaed or compelled to appear and testify if another law enforcement officer with personal knowledge of the facts and circumstances surrounding the seizure and the recommendation of forfeiture appears and testifies at the proceeding.

Subsection (i) is somewhat ambiguous, in that it seems to conflate the standards for seizure and for recommending forfeiture. Subsection (i)(1) states: "A motor vehicle used in violation of this section *shall be seized and forfeiture recommended* to the forfeiting authority" under certain conditions. (Emphasis supplied.) Subsection (i)(2) limits the language in subsection (i)(1) somewhat; it contains innocent owner exceptions, mandating that a "motor vehicle used in violation of this subtitle *shall not be seized* and *forfeiture shall not be recommended* " under the circumstances enumerated under the exceptions. (Emphasis supplied). Seizure and recommendation for forfeiture, however, are never concurrent; seizure precedes recommendation for forfeiture, and the two events are effectuated by different law enforcement authorities.

As written, the language of § 297(i)(2)(i) would seem to prevent a seizure if an innocent owner defense is available. The officer who seizes an automobile incident to an arrest,

however, will probably not have enough information at the time of the arrest to determine if the innocent owner defense applies. For example, the officer will likely not know that a registered owner did not know that drugs or paraphernalia were in the vehicle when someone other than the registered owner is arrested while driving the car.

It would seem unlikely, when the "innocent owner" is in the car with the family member at the time of the family member's arrest and the seizure of the car, that the police officer could ascertain with certainty that the owner was actually unaware of drug activity. Whether the factors in subsection (i)(2) have been met can usually only be determined subsequently by the chief law enforcement officer, after reviewing relevant information and the Motor Vehicle Administration records. Construed strictly as written, § 297(i)(2)(i) would seem to preclude the seizure of a vehicle incident to a lawful arrest when the driver is not the registered owner, because it is not possible for the arresting officer to know the state of mind of a registered owner who is not present at the time of the arrest. Yet such a reading would conflict with the plain language of subsection (d)(iv), which authorizes seizure when "there is probable cause to believe that the property has been used or intended to be used in violation of this subheading." § 297(d)(iv).

When analyzing a statute, "we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense." *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106 (1994); *see also State v. Thompson,* 332 Md. 1, 7, 629 A.2d 731 (1993) (courts must reach a statutory interpretation compatible with common sense). Section 297(i)(2)(i) can logically apply only in two situations. First, it would apply to preclude seizure when the arresting officer *actually knows* that the registered owner of the car is an innocent owner at the time of the arrest for a drug offense of a family member who is driving the car. Second, it would apply to preclude *recommendation for forfeiture* if information concerning an innocent owner defense comes to light subsequent to the seizure.

■ In any event, the lack of clarity in subsection (i) does not affect the resolution of the Boyds' claim that the vehicle was not legally seized. This is because the Boyds did not qualify for an innocent owner defense under subsection (i), which concerns seizure and recommendation for forfeiture.[10] The factors set forth in § 297(i)(2)(i) are plainly conjunctive requirements; all of the factors must be met for the innocent owner exception to apply. Ms. Boyd cannot meet the requirement of seizure of a quantity "insufficient" to suggest an intent to distribute, because Ms. Wisner was arrested for possession of numerous baggies containing cocaine or cocaine residue, and was later convicted of possession with intent to distribute. Thus, Ms. Boyd's asserted lack of knowledge that Ms. Wisner was using her car to transport cocaine, standing *alone*, would not have been enough to establish an innocent owner defense to the seizure or recommendation for forfeiture.

## III.

■ Appellants argue that the seizure of the car before a predeprivation hearing to determine whether the car is subject to forfeiture constitutes a due process violation. Significantly, appellants overlook § 297(h), which provides explicit procedures for notice and a hearing. "The purpose of the establishment of the standards, guidelines and methods of procedure [under § 297(h) ] is to provide, after due notice has been given to the owner, a forum in which it can be established whether the vehicle seized was used to facilitate the transportation, sale and possession of controlled dangerous substances...." *State v. One 1979 Pontiac Firebird*, 55

---

**10.** We note that the standard for *recommendation* for forfeiture differs from the standard for actual forfeiture. Subsection (c) sets forth an innocent owner defense to actual forfeiture and provides, in part: "*Property not subject to forfeiture.*—Property or an interest in property described under subsection (b)(4), (9), and (10) of this section may not be forfeited if the owner establishes by a preponderance of the evidence that the violation of this subheading was done without the owner's's actual knowledge." *See One 1988 Jeep Cherokee v. City of Salisbury*, 98 Md.App. 676, 635 A.2d 21 (1994).

Md.App. 394, 399, 462 A.2d 73 (1983). Clearly, the statute does not contemplate, nor does due process require, that a hearing *must* precede a seizure. Rather, it requires only that notice and a hearing be afforded prior to the forfeiture of the property. *See Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 679–80, 94 S.Ct. 2080, 2089–90, 40 L.Ed.2d 452 (1974) (holding that pre-seizure notice and a hearing were not required for the seizure of a yacht, when the seizure served the significant governmental purpose of allowing the government to acquire *in rem* jurisdiction over the property, the property was of a kind that could easily be moved to another jurisdiction if advance notice of the seizure had been given, and the seizure was conducted pursuant to the provisions of a statute).

Maryland courts have long recognized the constitutionality of both the seizure and forfeiture provisions of the statute. *Gatewood v. State,* 268 Md. 349, 301 A.2d 498 (1973); *Prince George's County v. One 1969 Opel,* 267 Md. 491, 298 A.2d 168 (1973); *Prince George's County v. Blue Bird Cab Co.,* 263 Md. 655, 284 A.2d 203 (1971). The statute protects against arbitrary seizure of property; seizure of property requires "process issued by any court having jurisdiction over the property." § 297(d). Subsection (d) provides exceptions to this requirement, permitting property to be seized "incident to an arrest or a search under a search warrant," § 297(d)(i), and when "there is probable cause to believe that the property has been used or intended to be used in violation of this subheading." § 297(d)(iv). In the context of the seizure of paraphernalia, the provisions allowing for seizure incident to an arrest or when probable cause exists to believe the property has been used in illegal activity have been held to be "adequate protection against arbitrary action." *Mid–Atlantic Accessories Trade Ass'n v. Maryland,* 500 F.Supp. 834, 848 (D.Md.1980). Moreover, the 1989 amendments added § 297(s) to the forfeiture law, enacting a "significant" additional procedural protection for owners who wished to interpose an innocent owner defense. *One 1988 Jeep Cherokee v. City of Salisbury,* 98 Md.App. 676, 683, 635 A.2d 21 (1994).

Subsection 297(s) gives the court the power to "[g]rant requests for mitigation or remission of forfeiture, or take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this section."

## IV.

Appellants argue that the statute is unconstitutional on its face, because the standards for seizure and recommendation of forfeiture of a vehicle are vague and overbroad. The circuit court concluded that the statute is constitutional, relying on *One 1969 Opel*, 267 Md. 491, 298 A.2d 168, which rejected a similar challenge to the recently enacted automobile seizure and forfeiture recommendation guidelines of the statute as being "hopelessly standardless" and failing to "inform the citizen under what terms and conditions his automobile may be forfeited or returned." *Id.* at 494, 298 A.2d 168. Recent authority supports the circuit court's conclusion. In *State ex. rel Frederick City Police Dep't v. One 1988 Toyota Pick-up Truck*, 334 Md. 359, 639 A.2d 641 (1994), the Court of Appeals again addressed the provisions of subsection (i), stating: "As we see it, § 297(i) was intended, as its words indicate, to vest *'in the seizing authority'* a measure of discretion, guided by the factors specified in the subsection, in making the determination whether the motor vehicle, which became 'subject to forfeiture' under § 297(b)(4), should be recommended for forfeiture." *Id.* at 374, 639 A.2d 641.

▆ Appellants further assert that the statute is unconstitutional as applied. They claim that the seizing authority and the forfeiting authority are not, in practice, separate entities, as required by statute, because the State's Attorney, the forfeiting authority under the statute, also sat on the board of the seizing authority, the Task Force. The circuit court understood appellants to argue that the decision to seize and the decision to recommend forfeiture must be made by separate officials, and found that this was the case, with the arresting officer making the decision to seize, and the chief

law enforcement officer making the decision to recommend forfeiture.

We agree that, under the statute, the officer recommending forfeiture and the forfeiting authority must exercise independent judgment. Allegations of a lack of independent judgment must be examined if an official in the executive branch has improperly recommended for forfeiture an automobile not subject to forfeiture, or if the forfeiting authority has improperly petitioned for forfeiture of an automobile not subject to forfeiture. In such a case, the owner of the vehicle would have the opportunity at the forfeiture hearing to establish that the automobile was not subject to forfeiture.

In appellants' case, however, the officer authorized to recommend forfeiture *did not* recommend the car for forfeiture, so appellants cannot be heard to complain that the process was somehow tainted. Nor did appellants offer any evidence to substantiate their claim that the State's Attorney, merely by sitting on the board of the Task Force, had any meaningful effect on the chief law enforcement officer's independent review of the circumstances of the seizure.

Appellants also argue that the Task Force violated the Maryland Declaration of Rights by arbitrarily offering the "buy back" option to some owners of seized vehicles, but not to others. They contend, in essence, that the Task Force, by failing to recommend the automobile for forfeiture, and the State's Attorney, by failing to file a petition for forfeiture, deprived them of the right to litigate their innocent owner defense. This argument is specious. Ms. Boyd was not compelled to buy back her car; she voluntarily agreed to do so. If, as they were free to do, appellants had rejected the "buy back" proposal, the car could have been recommended for forfeiture, the forfeiting authority could have petitioned for forfeiture, appellants would then have been afforded notice and a hearing, the deprivation of which they now complain, and they would have been able to litigate the innocent owner defense. It is questionable, however, whether the Boyds would have met with success in establishing that they lacked

actual knowledge of their daughter's illegal drug activity, pursuant to § 297(c).

■ The circuit court also observed that appellants lacked standing to challenge the statute, as applied, to those who were not offered a buy-back of their automobiles. Standing to sue requires that the litigant have "an actual, real and justiciable interest susceptible of protection through litigation." *Mayor and City Council of Ocean City v. Purnell–Jarvis, Ltd.,* 86 Md.App. 390, 402, 586 A.2d 816 (1991). Moreover, a person may not ordinarily sue to vindicate the constitutional rights of others. *Faulkner v. American Casualty Co.,* 85 Md.App. 595, 621, 584 A.2d 734 (1991). The exceptions to the rule are narrow. A litigant may assert the rights of third persons when a relationship between the litigant and the third persons is such that the rights of the third persons are inextricably linked with the actions of the litigant; when the litigant is as effective or nearly as effective a proponent of the rights of third persons as the third persons themselves would be; and if the rights of third parties are likely to be infringed. *Id.* at 622, 584 A.2d 734. This exception is reserved for relationships such as the doctor-patient relationship, or the relationship of an owner of real estate subject to racial restrictions and potential buyers who are members of a minority. *Id.*

The Boyds have not established a relationship between themselves and the unidentified third persons, who share with the Boyds only the bond of having had their cars seized. Moreover, there is no evidence either that the Boyds would be effective representatives of these unidentified persons, or that failing to offer these persons a buy-back opportunity would necessarily infringe their rights. Cars seized from owners who were not offered the opportunity to buy back their vehicles presumably either had their cars recommended for forfeiture, or had their cars returned to them, as authorized by statute. If their cars were recommended for forfeiture, they would have had the right to notice and a hearing as provided under the statute. Moreover, if they perceived any

violation of their rights, they would then have an opportunity to bring suit on their own behalf.

## V.

 Appellants contend that the statute does not give the Task Force the discretion to fail to recommend forfeiture once the automobile has been seized. Therefore, they claim that the buy back program violates the statutory scheme. The question here is whether a law enforcement entity's pre-forfeiture buy-back procedure is unconstitutional or in violation of the statutory scheme, when such a procedure is neither expressly authorized nor prohibited by the statute. In view of the Task Force's lawful seizure of the vehicle, the State certainly had a right to pursue forfeiture of the property. In our view, just as prosecutors enjoy the prosecutorial discretion to negotiate a plea bargain,[11] before or after charges are lodged, the officer recommending forfeiture had the discretion to refrain from recommending forfeiture and the forfeiting authority would have the discretion to avoid petitioning for forfeiture, in order to resolve issues concerning the seizure of the vehicle.

---

**11.** In *Santobello v. New York,* 404 U.S. 257, 260–261, 92 S.Ct. 495, 497–98, 30 L.Ed.2d 427 (1971), the Supreme Court recognized the desirability of plea bargains:

The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining," is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.

Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pre-trial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pre-trial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned.

Appellants urge us to reject the analogy to plea bargaining, noting that the forfeiture proceeding is a civil *in rem* proceeding. *1986 Mercedes Benz*, 334 Md. at 273, 638 A.2d 1164. Even if, *arguendo*, the plea bargain analogy is inapposite, because forfeiture is a civil proceeding, then the seizing authority and the forfeiting authority were entitled to negotiate and consummate a settlement of the dispute with appellants. The law encourages such settlements, because they promote efficiency and the economical use of judicial resources in the administration of justice. *Nationwide Mutual Ins. Co. v. Voland*, 103 Md.App. 225, 237, 653 A.2d 484 (1995).

The law enforcement authorities here may well have calculated that they had a substantial likelihood of succeeding in a forfeiture claim. Even if the prosecutor thought appellants would ultimately prevail, however, we believe that the prosecutor was entitled to attempt to resolve the dispute by way of a settlement. The settlement here apparently was premised on the value of the car, discounted for the time and expense such a proceeding was likely to cost the State. The Boyds could have conducted the same calculus as the prosecutor, and may have concluded that they would have an uphill battle at the forfeiture proceeding, at which an owner must prove that he or she lacked actual knowledge of illicit drug use. § 297(c). Moreover, the Boyds may have decided to accept the settlement agreement because, as a practical matter, the cost of litigating the forfeiture probably would have equaled or exceeded the value of the vehicle. It is also salient that the release that Ms. Boyd executed specified that she could have consulted with counsel. Even if an attorney advised the Boyds about posting a bond, pursuant to § 297(*o*), this process can be cumbersome and expensive.

 Certainly, an owner whose property has been forfeited may purchase the vehicle "at a sale conducted in a commercially reasonable manner...." *State v. One 1983 Chevrolet Van*, 309 Md. 327, 346, 524 A.2d 51 (1987). Pennsylvania has considered the related question of whether the court may use its equitable power to allow a person from whom property has

been forfeited to "redeem" that property for less than its market value. In *In re King Properties*, 535 Pa. 321, 635 A.2d 128 (1993), the trial court determined that, under Pennsylvania's drug forfeiture statute, King's entire interest in a house was forfeited because large quantities of cocaine, cash and drug paraphernalia were found in it. *Id.* at 325, 635 A.2d 128. Nevertheless, the trial court granted King the right to redeem the house for $30,000, relying on "ancient principles of equity of redemption." *Id.* The Commonwealth appealed, claiming that although the statute does not prohibit a party from whom property has been forfeited to re-purchase the property if sold, the statute does not include a redemption provision. The Pennsylvania Supreme Court concluded that the State's Controlled Substances Forfeiture Act "provides no method except purchase at sale for anyone to obtain forfeited property." Accordingly, it reversed the trial court's order allowing for redemption.

*In re King* focused on what was authorized by the statute. Appellants in the case *sub judice* rely heavily on the fact that the statute does not specifically authorize the Task Force's buy-back program. *In re King* is, however, distinguishable from this case. It is notable that *In re King* dealt with a below-value "buy back" offered *after* the forfeiture determination had been made. Moreover, a judge, and not the seizing authority, permitted the redemption, contrary to the wishes of the state.

While the Maryland statute does not specifically authorize a buy-back provision, it clearly vests a measure of discretion in the executive branch with respect to seizure, recommending forfeiture, and petitioning for forfeiture. Subsection (i) "was intended, as its words indicate, to vest '*in the seizing authority*' a measure of discretion, guided by the factors specified in the subsection, in making the determination whether the motor vehicle, which became 'subject to forfeiture' under § 297(b)(4), should be recommended for forfeiture." *One 1988 Toyota Pick-up Truck*, 334 Md. at 374, 639 A.2d 641.

We recognize that such discretion carries with it the potential for abuse. Statutes allowing law enforcement agencies to retain property that has been forfeited for the agency's use can create perverse incentives. Arguably, the police may concentrate their enforcement efforts on drug traders with expensive property which, if forfeited, would help to fill the coffers of the State or the political subdivision that employs the agent making the seizure.[12] *See* Michael F. Alessio, *From Exodus to Embarrassment: Civil Forfeiture Under the Drug Abuse Prevention and Control Act,* 48 S.M.U. L. Rev. 429, 453 n. 172 (1995). The police may also choose to pursue those who appear to lack the means to challenge any misconduct in regard to seizure. Consequently, "[i]t makes sense to scrutinize governmental action more closely when the State stands to benefit." *Harmelin v. Michigan,* 501 U.S. 957, 978 n. 9, 111 S.Ct. 2680, 2693 n. 9, 115 L.Ed.2d 836 (1991).

The buy-back program could, theoretically, motivate police to seize cars of modest value. Owners would more likely be willing to expend money to defend against forfeiture of a luxury car than they would for a vehicle valued at $2,500. In the case of the Boyds, even the relatively modest legal bills they might have incurred to contest forfeiture would have been quite high in proportion to the value of their car. The choice to contest forfeiture would have made little economic sense, even if the Boyds might have prevailed with an innocent owner defense; their efforts to seek to preserve their interest in a vehicle worth $2,500 could easily have cost them that amount in legal fees. Recognizing theoretical risks of abuse, however, does not warrant divesting the authorities of all discretion; the cure would be worse than the disease. Certainly, this case is an example of the benefits that settlements can achieve; the seizure itself was clearly lawful, but the

---

12. We are unaware of any authority that would permit the Task Force to retain the settlement proceeds. Because the statute expressly provides for the disposition of the proceeds upon forfeiture, any money obtained pursuant to the "buy back" program or a settlement must also be disposed of in accordance with § 297(f).

Boyds were able quickly to recover their vehicle, at a price less than its fair market value.

The case of *Bourexis v. Carroll County Narcotics Task Force*, 96 Md.App. 459, 625 A.2d 391 (1993), *cert. denied*, 332 Md. 453, 632 A.2d 150, *cert. denied*, 510 U.S. 1195, 114 S.Ct. 1303, 127 L.Ed.2d 654 (1994), is noteworthy here. In *Bourexis*, the appellant, who is an attorney of record on appellants' brief in the instant case, sued the Task Force in a civil proceeding, alleging that the Task Force's refusal to "work with" his clients deprived him of a property interest in his livelihood, denied him equal protection of the laws, and infringed his right of free speech. *Id.* at 463, 625 A.2d 391. "Working with" the clients included entering into plea bargain negotiations, as well as agreeing to forego seizure and forfeiture proceedings in consideration of a cash settlement, which is similar to the "buy back" arrangement complained of in this case. *Id.* at 464, 625 A.2d 391. The argument in *Bourexis* was that *refusal* to "buy back" cars harmed the attorney's clients, and derivatively harmed him. In the instant case, appellants argue the converse—that engaging in a "buy back" deal has harmed them. The *Bourexis* Court noted that "appellant is not a criminal defendant asserting that the prosecutor, or police officers associated with the prosecutor, have interfered with his right to counsel or to a fair trial." *Id.* at 473, 625 A.2d 391. The Court agreed with appellant that refusal to negotiate plea agreements with criminal defendants based solely on their choice of counsel would be arbitrary, but held that the appellant had failed to make a showing that the Task Force's policy of refusing to negotiate with appellant's clients had resulted in any interference with his occupational opportunities. The Court essentially applied the maxim: no harm, no foul. We said: "In short, [appellant] has alleged conduct that may be wrongful to others but none that has wronged him." Similarly, we are unable to ascertain that the agreement to forego forfeiture proceedings of the car in consideration of a cash settlement has "wronged" appellants.

The circuit court aptly noted:

"The difference in price [between the $2,500 value of the car and the $2,000 actually paid to buy back the car] falls in the favor of the [appellants]. If there was not a buy back policy, the [appellants] would not have recovered their automobile, worth $2,500. Because of the buy back policy, and the [appellants] were free to refuse this agreement, the [appellants] arguably saved $500."

We conclude that the Boyds were not harmed by opting to repurchase their car pursuant to the Task Force's "buy back" program, and that the statutory scheme does not preclude such a resolution.

## VI.

We next address appellants' contention that their allegations of intentional misrepresentation were sufficient to withstand a motion to dismiss. As discussed above, to prevail in this Court, appellants must demonstrate that the trial court improperly granted defendants' motions for summary judgment. In light of the conclusion that the Boyds' car was lawfully seized, there is no basis for the intentional misrepresentation claim, referred to below as a claim for fraud.

To prevail on a claim for fraud, the plaintiff must prove:

(1) that the defendant made a false representation; (2) that its falsity was either known to the defendant, or the misrepresentation was made with such reckless indifference to the truth as to be equivalent to actual knowledge; (3) that it was made for the purpose of defrauding the person claiming to be injured thereby; (4) that such person not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and would not have done the thing from which the injury had resulted had not such misrepresentation been made; and (5) that such person actually suffered damage directly resulting from such fraudulent misrepresentation.

*Parker v. Columbia Bank*, 91 Md.App. 346, 359, 604 A.2d 521 (1992) (internal citations omitted).

██ The single fact on which the claim against TFC Heuisler was based was his remark that the Boyds would "never" get their car back. We conclude that the trial court correctly determined that although this statement did in fact later prove to be untrue, it was merely the expression of an opinion about a future event. Moreover, it proved to be untrue because the Boyds did not rely on the statement; instead, they proceeded to buy back their automobile.

██ The single allegation against Mr. Walker was that he misrepresented that he had a right to detain the car and to sell it back to the Boyds, because they asserted that the vehicle had been illegally seized and Mr. Walker had no such right. The trial court, in dismissing the claim, did not address this claim squarely. Instead, the trial court found:

> Plaintiff claims that Mr. Walker fraudulently induced Plaintiffs into paying $2,000 in order to retrieve their car. Mr. Walker represented to Plaintiffs that the automobile was worth $2,500 and that Plaintiffs could have it for $2,000. This representation was not inaccurate and was not made with the purpose of defrauding the Plaintiffs. In fact, the car was sold to Plaintiffs for the price of $2,000. Therefore, the Court finds that there was not a misrepresentation and will accordingly dismiss Count 2 of Plaintiff's Amended Complaint.

██ We are governed by the rule that an "appellate court will not ordinarily undertake to sustain the [summary] judgment by ruling on another ground, not ruled upon by the trial court, if the alternative ground is one as to which the trial court had a discretion to deny summary judgment." *Three Garden Village Ltd. Partnership v. USF & G,* 318 Md. 98, 107–108, 567 A.2d 85 (1989) (quoting *Geisz v. Greater Baltimore Medical Center,* 313 Md. 301, 314 n. 5, 545 A.2d 658 (1988)). Based on the facts, the car was legally seized and detained. Therefore, the fraud claim against Mr. Walker failed because, as a matter of law, Mr. Walker's assertion that he lawfully detained the car was true when spoken. Had the trial judge addressed the contention actually before him, he

would have had to reach this conclusion as well. Since the court had no discretion to deny the motion, we may affirm the grant of the motion for summary judgment as to the fraud claim against Mr. Walker.[13]

Because the trial court correctly found that appellants failed to show either that the statute is unconstitutional on its face or that the statute is unconstitutional as applied, the trial court did not reach the issue of whether the defendants could assert a defense of qualified immunity with regard to the constitutional claims. As we affirm the trial court's holding that the statute is constitutional on its face and as applied in this case, we also decline to reach the issue of the defense of qualified immunity concerning the constitutional claims.

**JUDGMENTS AFFIRMED;**

**APPELLANTS TO PAY COSTS.**

---

**13.** Appellants have not challenged the grant of summary judgment with regard to the conspiracy claim.